**Angel M. COSME NIEVES, et al., Plaintiffs, Appellants,**

v.

**Col. Robert C. DESHLER, etc., et al., Defendants, Appellees.**

No. 85–1095.

United States Court of Appeals, First Circuit.

Argued May 6, 1985.

Decided March 18, 1986.

Samuel C. Vazquez Matias with whom Hector L. Marquez was on brief, for appellants.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, and Robert A. Reutershan, Asst. Director, on supplemental brief, for U.S.

Vincent E. Reilly, Office of the Judge Advocate Gen., with whom Francisco A. Besosa, Asst. U.S. Atty., and Daniel F. Lopez Romo, U.S. Atty., were on brief, for appellees.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Plaintiffs-appellants Angel M. Cosme Nieves, Secundino Machado, Tomas Garcia, and Lorraine Gorski, all employees of defendant-appellee Fort Buchanan Installation Club System ("FBICS"), brought an action for back pay and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (1982), and the labor laws of Puerto Rico. They now appeal from the district court's dismissal of their action for want of jurisdiction and for failure to state a claim upon which relief could be granted. *Cosme Nieves v. Deshler*, 601 F.Supp. 100 (D.P.R.1985). Plaintiffs also appeal from the district court's denial of their motion to remand the case to the Commonwealth courts. *Cosme Nieves v. Deshler*, 561 F.Supp. 1173 (D.P.R.1983).

### I.

Defendant FBICS operates the Commissioned Officers' Open Mess, the Non-Commissioned Officers' Open Mess, and the Package Beverage Branch at the Fort Buchanan military base in Puerto Rico.[1] All parties agree that FBICS is a non-appropriated fund instrumentality ("NAFI") of the Government of the United States; that is, its monies do not come from congressional appropriation but rather primarily from its own activities, services, and product sales. *See United States v. Hopkins*, 427 U.S. 123, 125 n. 2, 96 S.Ct. 2508, 2510 n. 2, 49 L.Ed.2d 361 (1976) (per curiam); *Perez v. Army & Air Force Exchange Service*, 680 F.2d 779, 780–81 (D.C.Cir.1982). It is also undisputed that FBICS is under the jurisdiction of the Armed Forces.[2]

On October 13, 1982, plaintiffs filed the present action in the Superior Court of Puerto Rico seeking back pay in the amount of $58,508.66 and liquidated damages in an equal amount, as well as interest, costs, expenses, and attorneys' fees. Each plaintiff seeks from FBICS damages in excess of $10,000 for failure to have paid proper wages and overtime, in alleged violation of section 18 of the FLSA, 29 U.S.C. § 218 (1982), and also of certain supposedly more beneficial provisions of the laws of Puerto Rico, P.R.Laws Ann. tit. 29, § 245 *et seq.* & § 271 *et seq.* (1985).

Defendants removed the case to the United States District Court for the District of Puerto Rico on February 4, 1983. The district court denied plaintiffs' motion for remand to the superior court, and retained jurisdiction, finding that it had original jurisdiction of the action under 28 U.S.C. § 1337 (1982),[3] that removal had

---

1. Each of these subdivisions is also named as defendant.

2. Colonel Robert C. Deshler, then present commanding officer of Fort Buchanan, and Colonel Clarence H. Wolliver, a past commanding officer of Fort Buchanan, are also defendants.

3. 28 U.S.C. § 1337 provides district courts with original jurisdiction over actions "arising under any Act of Congress regulating commerce," such

been proper under 28 U.S.C. § 1441(a) (1982),[4] and that there was no express provision prohibiting removal. On August 22, 1983, this court denied plaintiffs' petition for a writ of mandamus.

On January 14, 1985, the district court on defendants' motion dismissed the case for lack of jurisdiction and for failure to state a claim upon which relief could be granted. The court reasoned that the Government of the United States was plaintiffs' actual "employer," and hence was the only proper defendant in a suit brought under the FLSA. Moreover, the court found that because plaintiffs' individual claims each exceeded $10,000, federal jurisdiction over their claims lay exclusively in the United States Claims Court under 28 U.S.C. § 1491 (1982).[5] The court also determined that plaintiffs did not have a claim under section 18(a) of the FLSA and the Puerto Rico laws. This appeal followed.

In their original appellate briefs, and in oral argument before this court, defendants, represented by the office of the Judge Advocate General of the Department of the Army, urged us to affirm the district court's ruling that the United States was the proper defendant and that the Claims Court had exclusive jurisdiction over the suit. They further contended that exclusive jurisdiction over this appeal lay solely in the United States Court of Appeals for the Federal Circuit under 28 U.S.C. § 1295(a)(2) (1982) because the district court allegedly based its jurisdiction on 28 U.S.C. § 1346(a)(2) (1982).

Because it was unclear to us whether arguments being made on behalf of defendants on these arcane jurisdictional issues reflected the settled views of the federal government, rather than of simply the Department of the Army, we requested the Solicitor General to file a supplemental brief.[6] On December 13, 1985, the Department of Justice submitted on behalf of the United States a comprehensive brief which concedes, as plaintiffs have argued all along, that the NAFI is a proper defendant under the FLSA, and that the district court rather than the Claims Court has jurisdiction over this suit. Defendants have subsequently advised us that they now accept this position as their own. Hence the only issues remaining in contention between the parties are whether the case was properly removed from the Superior Court of Puerto Rico to the federal district court, and whether certain rulings by the district court on the merits of plaintiffs' claims should be sustained.

## II.

### A. *Jurisdictional Issues*

While defendants no longer argue that this case should have been brought in the Claims Court as an action exclusively against the United States or that the Federal Circuit Court of Appeals has sole jurisdiction over this appeal, we must, of course, decide these issues for ourselves, since the parties cannot, by consent, confer jurisdiction on a court. *See, e.g., Sosna v. Iowa,* 419 U.S. 393, 398, 95 S.Ct. 553, 556, 42 L.Ed.2d 532 (1975). After reviewing the

as the FLSA. We note that jurisdiction could also be based on 28 U.S.C. § 1331 (1982), since a claim under the FLSA "arises under the Constitution, laws, or treaties of the United States...."

**4.** "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction ... may be removed by the defendant or the defendants...." 28 U.S.C. § 1441(a).

**5.** District courts have jurisdiction concurrent with the United States Claims Court over non-tort claims against the United States only if they

do not exceed $10,000 in amount. 28 U.S.C. § 1346(a)(2) (1982).

**6.** We noted in our request that "[b]ecause NAFI's are used throughout the military, as well as in other branches of government, we feel it important that this court be assured that it is receiving the considered view, formed at an appropriate level, of the Justice Department concerning the proper disposition of this case." We also pointed out that there were precedents from the former Court of Claims, not discussed in defendants' original brief, which seemed at variance with the position defendants were then taking.

government's supplemental brief and the relevant authorities with care, we accept the Attorney General's position on these issues. Accordingly, we reverse the district court's dismissal of plaintiffs' FLSA claims for lack of jurisdiction. We hold also that this appeal is properly before this court.

The district court found, in keeping with the contentions then being urged by defendants, that the action was in effect a "claim against the United States founded ... upon ... [an] Act of Congress," and must therefore be presented to the Claims Court under the Tucker Act, since the claims exceeded $10,000 in amount. 28 U.S.C. § 1491(a).[7] At first blush, this analysis might seem to be correct. NAFIs, after all, are " '[a]rms of the federal government deemed by it essential for the performance of governmental functions' ";[8] and a claim for money damages against a federal instrumentality acting within its statutory authority is usually treated as an action against the United States, since the judgment, if any, must be paid from the public treasury. *See Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963); *Butz Engineering v. United States,* 499 F.2d 619, 621–23 (Ct.Cl.1974) (citing cases). Moreover, because the FLSA defines the term "employee" as including "any individual employed by the Government of the United States" in, *inter alia,* a "nonappropriated fund instrumentality," 29 U.S.C. § 203(e)(2)(A)(iv)

(1982),[9] the district court could believe, as it did, that the "real" employer under the FLSA was the United States rather than the NAFI by and for whom the employees were actually hired to work.

But while we can appreciate the district court's reasoning, we believe it was erroneous insofar as it was based on the premise that a district court lacks jurisdiction to entertain a FLSA action against a NAFI itself *and its nonappropriated funds* (which is the kind of action we construe this to be). Because NAFIs are supported by "nonappropriated" funds rather than monies from the public treasury, they constitute a special breed of federal instrumentality, which cannot be fully analogized to the typical federal agency supported by appropriated funds.

First, it has long been held that, absent special legislation, the federal government does not assume the financial obligations of a NAFI, as it does those of a federal agency funded in the usual way from congressional appropriations. *See United States v. Hopkins,* 427 U.S. 123, 127, 96 S.Ct. 2508, 2511,. 49 L.Ed.2d 361 (1976) (per curiam); *Standard Oil Co. v. Johnson,* 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed.2d 1611 (1942). As a consequence, because judgments rendered by the Claims Court can be paid only from appropriated funds, 28 U.S.C. § 2517(a) (1982), the Claims Court has held that it lacks jurisdiction to grant judgments against the United States in favor of NAFI plaintiffs except in

---

**7.** The Tucker Act waives the sovereign immunity of the United States to suit and grants the Claims Court jurisdiction over,

any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States.... For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchange, or Exchange Councils of the National Aeronautics and Space Administration ... shall be considered an express or implied contract with the United States.

28 U.S.C. § 1491(a).

**8.** *Army & Air Force Exchange Service v. Sheehan,* 456 U.S. 728, 733, 102 S.Ct. 2118, 2122, 72

L.Ed.2d 520 (1982) (quoting *United States v. Mississippi Tax Comm'n,* 421 U.S. 599, 606, 95 S.Ct. 1872, 1877, 44 L.Ed.2d 404 (1975)); *see also Standard Oil Co. v. Johnson,* 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed.2d 1611 (1942).

**9.** 29 U.S.C. § 203(e) provides in part:

(1) Except as provided in paragraphs (2) and (3), the term "employee" means any individual employed by an employer.

(2) In the case of an individual employed by a public agency, such term means—

(A) any individual employed by the Government of the United States—

(iv) in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces....

those instances where Congress has made special provision.[10]

Second, NAFIs are also special in that they are revenue-producing entities that take in and disburse funds generated by their own activities (here, we are told, primarily through the sale of food and beverages). Congress, in fact, has clearly expressed its intention that no appropriated funds be used to support NAFI activities, and thus that their "nonappropriated" funds be severed from general federal revenues. *See Hopkins*, 427 U.S. at 125; *Swiff-Train Co. v. United States*, 443 F.2d 1140, 1141 (1971).[11] Because NAFI funds, therefore, have an identity apart from that of treasury funds, NAFIs may be subject to claims directly against them and their nonappropriated assets, as distinct from claims against the United States and the public fisc. *See Rivera v. Installation Club System*, 623 F.Supp. 269 (D.P.R.1985) (permitting suit against NAFI itself).[12]

Apparently relying on the foregoing special characteristics of NAFIs, the Attorney General, in his supplemental brief, has abandoned defendants' earlier position that the action lay exclusively against the United States, contending now that it was proper for plaintiffs to have sued the employing NAFI itself, to the extent of its nonappropriated funds. In taking this position, the Attorney General points out that the FLSA provides that actions "may be maintained against *any employer (including a public agency)* in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b)

(1982) (emphasis added). *See also* 29 U.S.C. § 203(d) (1982) (an "employer" includes a "public agency").[13] Since a NAFI meets this definition of a public agency employer, the Attorney General asserts that, in the absence of Tucker Act jurisdiction, the NAFI is suable in its own name and right with respect to its nonappropriated funds. Indeed, the Attorney General announces in his supplemental brief that "if this case is transferred to the Claims Court, [the government] will take the position that that court does not have jurisdiction over this case."

■ Given the Attorney General's view that a NAFI is suable in its own right, and given the precedents indicating that it would, at very least, be an uphill battle to sue the United States in the Claims Court for alleged violations of the FLSA, we hold that it was error for the district court to dismiss on the ground that plaintiffs were obliged to have brought this action in the Claims Court against the United States. In so saying, we stop short of deciding whether a Claims Court action against the United States might have been possible, given the fact that the FLSA waives the sovereign immunity of the United States to suit by its employees and that NAFI employees are described in the FLSA as being employed by the United States government. We hold only that plaintiffs are entitled to proceed in the district court against their immediate employer, the NAFI itself, to the extent of its nonappropriated funds.

10. *See, e.g., McCloskey & Co. v. United States*, 530 F.2d 374 (Ct.Cl.1976); *Kyer v. United States*, 369 F.2d 714 (Ct.Cl.1966), *cert. denied*, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967); *Keetz v. United States*, 168 Ct.Cl. 205 (1964).

11. *Compare L'Enfant Plaza Properties, Inc. v. United States*, 668 F.2d 1211, 1212 (Ct.Cl.1982) (holding that a suit against a financially self-sufficient agency, where governing legislation does not preclude congressional appropriations, is a suit against the United States); *Breitbeck v. United States*, 500 F.2d 556, 559 (Ct.Cl.1974) (holding that a suit against a self-supporting federal corporation where there is no "clear cleavage" between its funds and those of the United States is a suit against the United States).

12. *Cf. Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644, 646 (5th Cir.1980) (per curiam) (permitting suit against Secretary of HUD rather than the United States, where statute provided for such a suit and any judgment was recoverable from *separate* funds in the Secretary's possession and control) (citing cases).

13. Act of April 8, 1974, Pub.L. No. 93–259, § 6(a)(1), 1974 U.S.Code Cong. & Ad.News (88 Stat.) 55, 59. An "employer" is currently defined to
include[ ] any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency....
29 U.S.C. § 203(d) (1982).

In reaching this result, we agree with the Attorney General that jurisdiction for the district court to hear this action is to be found in 28 U.S.C. § 1331 (federal question). *See also* 28 U.S.C. § 1337.[14] The Claims Court, to be sure, has exclusive jurisdiction under the Tucker Act over money claims exceeding $10,000 if brought against the United States, *see* 28 U.S.C. § 1491(a); [15] *see also Doe v. United States Department of Justice,* 753 F.2d 1092, 1101 (D.C.Cir.1985); *Graham v. Henegar,* 640 F.2d 732, 734–35 (5th Cir.1981); *American Science & Engineering, Inc. v. Califano,* 571 F.2d 58, 62 (1st Cir.1978). This claim, however, is brought against the NAFI itself and its nonappropriated funds and, as already explained, the NAFI is not a mere incarnation of the United States but, having separate "nonappropriated" funds of its own, is to that degree a separate, suable entity. This case does not fit, moreover, within the limited exception in the Tucker Act permitting actions based on contracts with certain NAFIs to be treated as claims against the United States.[16] Hence, we accept the Attorney General's view that there is no reason to deprive the district court of its ordinary jurisdiction under 28 U.S.C. §§ 1331 or 1337. In the FLSA the United States has clearly waived the sovereign immunity of federal agencies, including NAFIs, to suit by their employees. *See* 29 U.S.C. § 216(b); *Zumerling v. Devine,* 769 F.2d 745, 748 (Fed.Cir. 1985). We therefore conclude that this action may be maintained in the district court against the NAFI.

It also follows that this appeal is correctly before this court rather than before the United States Court of Appeals for the Federal Circuit as defendants once contended (*viz.,* before rethinking their position in light of the Attorney General's supplemental brief). The Federal Circuit Court has sole jurisdiction over "an appeal from a final decision of a district court of the United States ... if the jurisdiction of that court was based, in whole or in part, on section 1346 of [title 28 of the United States Code]...." 28 U.S.C. § 1295(a)(2). Here, since the claims exceeded $10,000 in amount, district court jurisdiction could not possibly be based on section 1346(a). The district court so recognized, but then went on to determine, erroneously we now believe, that the United States Claims Court had exclusive jurisdiction under 28 U.S.C. § 1491. As we must reject the existence of exclusive Claims Court jurisdiction, *see supra,* and instead find jurisdiction in the district court under 28 U.S.C. § 1331 and § 1337, it follows that section 1295(a)(2) is irrelevant to this appeal, which is properly in our court under 28 U.S.C. § 1291.

### B. *Removal of Case*

Plaintiffs continue to assert that the district court should have remanded the case back to the Commonwealth courts since Congress intended to bar the removal of cases arising under the FLSA. In support, they rely principally on the particular phrasing in the Act that a FLSA suit *"may be maintained* in any Federal or State court of competent jurisdiction." 28 U.S.C. § 216(b) (emphasis added). Plaintiffs assert that the use of "maintained" means not simply that state and federal courts share concurrent jurisdiction over FLSA suits but also that Congress intended that any FLSA action begun in a state (or Com-

---

**14.** *See* note 3 *supra.*

**15.** For the text of 28 U.S.C. § 1491(a), see note 7, *supra.*

**16.** The Tucker Act was amended in 1970 to state that an express or implied *contract* with the NAFIs specifically named in section 1491(a) should be considered an express or implied contract with the United States, allowing suits on such contracts to be brought in the Court of Claims. *See* Pub.L. No. 91–350, 84 Stat. 449. For text, see note 7, *supra.* But as the govern-

ment's brief points out, "[n]othing in the language of the ... amendment or its legislative history gives any indication that ... Congress had any intention to allow Tucker Act actions by NAFI employees based upon the Constitution, an Act of Congress, or a regulation or an executive department...." A FLSA action is one based upon an Act of Congress, not upon a contract, and the NAFI defendant here is not one of the NAFIs to which the Tucker Act exception applies.

monwealth of Puerto Rico) court be concluded there.

It is true that prior to 1948 the one circuit court that addressed the issue found the language significant and held that Congress intended to prohibit the removal of FLSA actions. *See Johnson v. Butler Brothers*, 162 F.2d 87 (8th Cir.1947). In 1948, however, Congress amended the general removal statute to provide that civil actions may be removed "[e]xcept as otherwise *expressly provided* by Act of Congress." 28 U.S.C. § 1441(a) (emphasis added). While courts remain split, the weight of subsequent case law is in favor of permitting FLSA cases begun in state courts to be removed to the federal courts pursuant to the authority contained in section 1441(a).[17] *See generally* 14A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3729, at 496–97 nn. 56–57 (2d ed. 1985) (collecting cases); Annot., A.L.R. Fed. 919 (1972 & Supp.1985).

As the first circuit court to face this issue since the 1948 amendment, we find ourselves in agreement with those district courts that have allowed removal. Section 1441(a) explicitly states that an express provision by Act of Congress is required to preclude the right to removal. We think the words "expressly provided" must be construed to mean exactly that. *See Pueblo International, Inc. v. DeCardona*, 725 F.2d 823, 827 (1st Cir.1984). Lacking an explicit statutory directive by Congress that the customary right to remove is abrogated in the instance of FLSA suits,[18] we decline to prohibit their removal. The

words "may be maintained" are ambiguous; at best they are suggestive. They are not an express provision barring the exercise of the right to removal. If Congress wished to give plaintiffs an absolute choice of forum, it has shown itself capable of doing so in unmistakable terms,[19] and it could easily have done so here.

We are aware that sensible policy arguments can be made against the removal of FLSA suits, although reasonable arguments the other way can also be marshalled. *See Sicinski v. Reliance Funding Corp.*, 461 F.Supp. 649 (S.D.N.Y.1978); *Hill v. Moss-American, Inc.*, 309 F.Supp. 1175, 1178 (N.D.Miss.1970). But Congress has made it plain that the right of removal is to stand absent an express provision to the contrary, and it is the responsibility of Congress, not of the courts, to speak on the matter if it wishes to foreclose removal of FLSA cases. We hold, therefore, that since the district court has original jurisdiction of the suit, and nothing in the FLSA or the general removal statute expressly prohibits the removal of FLSA actions, the case was properly removed pursuant to 28 U.S.C. § 1441.

## C. *FLSA Claims*

Plaintiffs also assert that the district court erred in dismissing their claim to back pay and damages under certain Puerto Rico provisions which are allegedly "more beneficial" than the FLSA. In their view, section 18(a) of the FLSA, which per-

---

17. District courts in Puerto Rico have adopted the position favoring removal, *see Zorrilla v. Puerto Rican Cement Co.*, 227 F.Supp. 159 (D.P.R.1964); *Rolon v. Flexicore Co.*, 216 F.Supp. 954 (D.P.R.1963), as have district courts in the Second Circuit, *see Sicinski v. Reliance Funding Corp.*, 461 F.Supp. 649 (S.D.N.Y.1978); *Asher v. William L. Crow Construction Co.*, 118 F.Supp. 495 (S.D.N.Y.1953).

18. In support of their argument that removal is prohibited, plaintiffs point to a statement in the Senate Committee report to Pub.L. No. 85–554 that "Congress itself has recognized the inadvisability of permitting removal of cases" arising under such laws as the FLSA. *See* S.Rep. No. 1830, 85th Cong., 2d Sess. 9, *reprinted in* 1958

U.S.Code Cong. & Ad.News 3099, 3106. But the amendment under discussion involved 28 U.S.C. § 1445, making state workmen's compensation cases non-removable, and neither 28 U.S.C. § 1441 nor 29 U.S.C. § 216(b) is mentioned or affected by the amendment. At best the statement is no more than an "oblique reference" without any documentation whatever. *See Hill v. Moss-American, Inc.*, 309 F.Supp. 1175, 1177 n. 6 (N.D.Miss.1970).

19. *See, e.g.,* 28 U.S.C. § 1445 (1982) (certain actions against railroads arising under state workmen's compensation laws); 15 U.S.C. § 77v(a) (1982) (actions under Securities Act of 1933).

mits states to adopt higher standards than those established by the Act,[20] grants plaintiffs as a matter of federal law the benefits of any existing Commonwealth laws that are more favorable to them. The district court rejected this argument on the grounds that the Puerto Rico laws upon which plaintiffs rely exempt federal employees from coverage, and that therefore plaintiffs did not have a cause of action under section 218(a). We agree.

First, we find plaintiffs' reliance on section 218(a) misplaced. Section 218(a) simply makes clear that the FLSA does not preempt any existing state law that establishes a higher minimum wage or a shorter workweek than the federal statute. It does not purport to incorporate existing state law; and it certainly does not guarantee plaintiffs, as employees covered by the FLSA, the benefit of more favorable Puerto Rico laws that do not of their own force apply to federal employees. In order to prevail, plaintiffs cannot simply invoke section 218(a) but must also show that the more beneficial Commonwealth provisions actually apply to them. This they have failed to do.

Plaintiffs claim they are owed back pay under two sets of Puerto Rico provisions— title 29, section 245 *et seq.*, imposing minimum wage requirements, and title 29, section 271 *et seq.*, treating overtime hours and rates of compensation. As the district court concluded, however, these provisions do not apply to federal employees in Puerto Rico. First, "[p]ersons employed by the Government of the United States" are specifically excluded from coverage under the minimum wage provisions. *See* P.R.Laws Ann. tit. 29, § 246e (1985).[21] Second, while the statute is silent as to whether federal employees are also excluded from coverage under the overtime provisions, Commonwealth employees are exempted, *see* P.R. Laws Ann. tit. 29, § 285 (1985),[22] and the Puerto Rico government has given its opinion on two separate occasions that federal employees were intended to be exempted as well.

As exhibits to their motion to dismiss, defendants submitted to the district court two opinion letters from the Commonwealth's Department of Labor and Human Resources.[23] In both, the Department adopted the view that the minimum wage and overtime provisions with which we are concerned did not apply to federal employees in Puerto Rico. According to the Department, the "legislative intention that prompted the enactment of both [sets of provisions] was to make them apply exclusively to the private enterprise and to local state government enterprises that function as private businesses." Moreover, it saw "no reason" to include federal employees under the laws while excluding Commonwealth employees. While these opinion let-

**20.** 29 U.S.C. § 218(a) (1982) provides in part that:

No provision of [the FLSA] or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this [Act].

**21.** Section 246e provides in part that:
(a) This act shall not apply to:

. . .

(2) Persons employed by the Government of the United States of America or by the Government of the Commonwealth of Puerto Rico, with the exception of those agencies or instrumentalities of the latter which operate as private businesses or enterprises. . . .

**22.** Section 285 provides in part that:

The provisions of this Act shall not apply to the employees of the Commonwealth Government, the Municipal governments, the Government of the Capital, or of the agencies or instrumentalities of said governments, excepting such agencies or instrumentalities as are devoted to agricultural, industrial, commercial or public-service enterprises.

**23.** The first letter, apparently written in response to an inquiry from the Office of the Judge Advocate, Department of the Army, at Fort Buchanan, is dated July 23, 1980, and is signed by the then Secretary for the Department of Labor and Human Resources, Carlos S. Quiros. The second letter, a response to an inquiry from the United States Department of Justice, District of Puerto Rico, is dated June 4, 1984, and is signed by Julio Cruz Rodriguez, Esquire, for the Solicitor of Labor.

ters do not have the force of law, they represent the views of the Department responsible for overseeing the enforcement of the provisions. *See* P.R.Laws Ann. tit. 29, § 246. In the absence of any Commonwealth court decision discussing the applicability of section 285's exemption provision to federal employees, we rely on the government's views, particularly since we find them reasonable and plaintiffs have proffered nothing to persuade us otherwise.

The primary argument plaintiffs muster against this interpretation of the Puerto Rico provisions appears to be a constitutional one. Citing *Garcia v. San Antonio Metropolitan Transit Authority,* — U.S. ——, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), plaintiffs argue that the Commonwealth of Puerto Rico cannot exempt itself, and by extension the federal government, from its own statutes. We fail to see how *Garcia* is relevant to this case. *Garcia* held that the FLSA applies to state employees. Here, no one disputes the applicability of the federal statute to either federal or Commonwealth employees in Puerto Rico. Moreover, there is nothing unconstitutional about a state establishing different wage provisions for government employees than for their private sector counterparts so long as the laws are rationally based. *See generally* L. Tribe, *Constitutional Law* § 16–2 (1978) (classifications used in economic legislation are valid under the equal protection clause if rationally related to a legitimate public purpose). We therefore affirm the district court's dismissal of plaintiffs' claims brought under section 18(a) of the FLSA and the Puerto Rico laws.

While it is not entirely clear from the record before us, plaintiffs also appear to assert a claim for back wages and for overtime under 29 U.S.C. § 218(b)(2).[24] That is, it is possible that, while plaintiffs are not entitled to the benefit of the Commonwealth laws, they have a claim for back pay even under the FLSA standard. We are unsure whether this is so since plaintiffs have not specifically alleged exactly how defendants have violated section 218(b)(2). In its opinion, the district court appeared to recognize section 218(b)(2) as an additional basis for plaintiffs' claims but it did not reach this issue before dismissing the case. Now that the rather complex jurisdictional issues have been resolved, and it is clear that the case is properly before the district court, we direct the court to address the merits of this particular claim, assuming of course plaintiffs wish to press it.

We therefore hold that the district court has jurisdiction over plaintiffs' FLSA claims against FBICS and its subdivisions in respect to its nonappropriated funds, and accordingly we vacate the lower court's judgment dismissing plaintiffs' action. We affirm the district court's finding that the case was properly removed from the Superior Court of Puerto Rico. We also affirm the district court's dismissal of plaintiffs' claims brought under section 18(a) of the FLSA and the Puerto Rico laws. Finally, we remand for consideration of plaintiffs' possible section 218(b)(2) claim. Each party shall bear its own costs.

*So ordered.*

---

**24.** Section 218(b)(2) provides:

(2) any employee employed in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces, shall have his basic compensation fixed or adjusted at a wage rate that is not less than the appropriate wage rate provided for in section 206(a)(1) of this title (except that the wage rate provided for in section 206(b) of this title shall apply to any employee who performed services during the workweek in a work place within the Canal Zone), and shall have his overtime compensation hourly rate not less than the overtime rate provided for in section 207(a)(1) of this title.