*90 CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Region II, Child and Family Services, Inc., appeals the First Judicial District Court, Lewis and Clark County, review of administrative hearings held by the Montana Department of Labor and Industry. The District Court reversed the agency’s determination that live-in employees were not entitled to compensation for time spent sleeping during supervision of residential care facilities and ordered the appellant to pay back wages, liquidated damages, costs, and attorney fees against the employer. We reverse.
ISSUES
Appellant Region II, Child and Family Services, Inc., raises the following issues.
(1) Did the District Court err in substituting its own findings of fact for those of the Montana Department of Labor and Industry?
(2) Did the District Court err in holding that the respondents’ wage claims were subject to the Montana Minimum Wage and Maximum Hour Act as well as the federal Fair Labor Standards Act?
(3) Did the District court err in holding that the claimants’ sleep time was compensable?
(4) Did the District Court err in rejecting interpretative opinions of the Administrator of the Wage and Hour Division of the United States Department of Labor?
(5) Did the District Court err in holding that Region II was not entitled to use the good faith defense of the federal Portal to Portal Act?
(6) Did the District Court err in holding that the claimants were entitled to damages, penalties, costs and attorney fees?
The claimants cross-appeal the issue of whether the District Court erred in failing to award attorney fees based on the claimants’ contingency agreement or in the alternative to apply a multiplier to the award.
FACTS
Region II, Child and Family Services, Inc., is a private, nonprofit corporation which, under contract with the State of Montana, provides residential care facilities for the developmentally disabled and multiple handicapped.
*91 The wage claimants worked at Region IPs group homes between 1983 and 1985 as either full-time or weekend trainers and supervisors. Weekend trainers reported to the group home Friday afternoon and remained until Sunday evening. Full-time trainers covered from Sunday night through Friday morning. The full-time employees were on duty, and required to actively supervise clients, from about 7:00 a.m. until 10:00 a.m., when the clients left to attend training programs at the Great Falls Easter Seals Center. Typically, full-time trainers were off duty and free to leave the facilities until the clients returned from school. This four- to nine-hour period was the only time they were free to leave the group home. As the Center provided no training on Saturday or Sunday, weekend employees were required to be on duty throughout each day.
Region II required both types of employees to remain at the group homes overnight and provided sleeping facilities. The overnight period lasted from about 10:00 p.m. to 7:00 a.m. Employees who received five consecutive hours of uninterrupted sleep during this period were compensated only for the time they spent attending clients. If employees did not receive five consecutive hours of uninterrupted sleep, Region II paid for the entire overnight period. Region II established this overnight policy in compliance with two interpretative opinions, known as the White and Cohen letters, issued by the Wage and Hour Division of the United States Department of Labor. The claimants understood the overnight policy when they went to work for Region II.
The claimants filed individual wage claims with the Montana Department of Labor and Industry [hereinafter the Department] for the uncompensated sleep time Region II required them to be present at the group homes. The Department consolidated the claims and held an administrative hearing. The hearing examiner rejected the claims after applying the federal Fair Labor Standards Act [hereinafter F.L.S.A.] (codified at 29 U.S.C. §§ 201 through 219) and interpretative opinions of the Administrator of the Wage and Hour Division of the United States Department of Labor.
The claimants appealed to the First Judicial District Court for judicial review of the Department’s decision, claiming error in the Department’s use of the F.L.S.A. as opposed to the Montana Minimum Wage and Maximum Hour Act [hereinafter M.W.M.H.A.] (codified at §§ 39-3-401 through -410, MCA). The District Court reversed the Department’s decision. It agreed with the Department that the F.L.S.A. applied to the claims, but rejected the White and Cohen *92 opinion letters as contrary to legislative intent and held that the F.L.S.A. regulations required that overtime be paid in the claimants’ situation. The District Court remanded the claims to the Department directing it to determine damages.
Region II petitioned the court for another review arguing that the good faith defense of the federal Portal to Portal Act [hereinafter P.P.A.] (codified at 29 U.S.C. §§ 216, 251 through 262) barred the wage claims under federal law. The District Court denied second review reasoning that even if the P.P.A. barred the claims under federal law, the M.W.M.H.A. would apply and produce the same result.
In compliance with the District Court’s order, the Department ordered Region II to pay the claimants a total of $99,393.50 in back wages and an equal amount in penalties as required by § 39-3-206, MCA. The Department found that it had no authority to grant the claimants’ request for attorney fees. The District Court also reviewed this agency ruling at Region II’s request and approved the Department’s decision. The District Court further ordered Region II to pay the claimants $13,000 in attorney fees to cover expenses incurred by the claimants while before the District Court.
Region II now appeals the District Court’s reversal of the Department’s determination of no liability, denial of retrial, review of the Department’s determination of damages and penalties, and judgment on attorney fees.
We note that Judge Gordon R. Bennett issued all the substantive orders and opinions that are now the subject of this appeal. The judge of record, Jeffrey M. Sherlock, handled only the final procedural matters following Judge Bennett’s retirement in December of 1988.
FINDINGS OF FACT
A district court’s review of an agency’s findings of fact is strictly limited. The reviewing court may affirm the agency’s findings. Section 2-4-704(2), MCA. It may clarify the agency’s findings so long as it does not substitute its judgment for that of the agency. Montana State Highway Patrol Officers v. Board of Personnel Appeals (1984), 208 Mont. 33, 39, 676 P.2d 194, 198. The court may overrule an agency’s findings of fact if they are clearly erroneous. They are not clearly erroneous if the record contains substantial credible evidence supporting the findings. City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 430-31, 651 P.2d 627, 632. In no *93 case may the district court substitute its own findings of fact for those of the agency. Section 2-4-704(2), MCA. The rules of agency review rely on the principle that the agency, and not the district court, is the finder of fact. If a factual question is essential to an agency’s decision, and the agency’s findings of fact are so insufficient that they cannot be clarified or are entirely absent, the district court should remand the case to the agency for appropriate findings.
In the present case, the District Court violated this principle by relying on its own findings of fact in at least two instances. The first instance centers on the Department’s Finding of Fact No. 11 which states:
“Allen Copeland was viewed by the respondent as working periods in excess of 24 hour duty. The other claimants were viewed by the respondent as residing on the premises for an extended period of time.” (Emphasis added.)
The District Court correctly noted that this finding is little more than a recitation of the testimony. However, instead of clarifying the finding or remanding it to the Department, the court rejected the finding and proceeded as though the Department had come to the opposite conclusion. The court utilized 29 C.F.R. 785.21, a regulation which applied only if the claimants were not on duty in excess of twenty-four hours and did not live on the employer’s property for an extended period. The court thereby substituted its own findings of fact for those of the Department in violation of section 2-4-704(2), MCA.
The second instance resulted from a disagreement between the Department and the District Court as to what law controlled. The Department determined that the F.L.S.A. governed the wage claims, but did not then look to the regulations propagated under the Act. Instead, it went directly to the interpretative opinions of the Administrator of the United States Department of Labor found in the White and Cohen letters. The District Court initially agreed that the F.L.S.A. controlled the claims, but analyzed the case under the F.L.S.A. regulations.
While the findings of fact necessary to apply the interpretative opinions and those necessary to apply the regulations are substantially the same, the District Court came upon at least one discrepancy. The court refused to apply one regulation, 29 C.F.R. 785.22, because the Department did not make the requisite finding that the claimants usually enjoyed an uninterrupted night’s sleep. The Department apparently never considered the issue since the interpreta *94 tive opinions relied upon by the Department required no such finding. The District Court, however, proceeded as though the examiner had found that the claimants usually did not enjoy an uninterrupted night’s sleep. The court thereby interjected its own findings of fact into the proceedings.
The reviewing court has the duty to determine whether the agency applied the appropriate law and whether its findings of fact are sufficient to justify the agency’s rulings. When the court determines that the agency’ findings are insufficient or that the agency applied the wrong law, it may not use the opportunity to usurp the agency’s role as the trier of fact. We hold that the District Court committed reversible error by failing to remand this case to the Department for suitable findings of fact.
DOES THE M.W.M.H.A. APPLY?
The determinative issue in this case is whether employees, such as the present claimants, who are subject to the federal Fair Labor Standards Act may also rely on the Montana Minimum Wage and Maximum Hour Act. The problem arises from the interaction of the federal Fair Labor Standards Act, the Montana Minimum Wage and Maximum Hour Act, and the federal Portal to Portal Act.
In 1938, Congress passed the Fair Labor Standards Act to prevent the use of unfair trade practices in interstate commerce leading to “labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . .” 29 U.S.C. § 202(a). To ensure a minimum living standard, the F.L.S.A. establishes a minimum hourly wage, 29 U.S.C. § 206, and a maximum workweek without overtime compensation, 29 U.S.C. § 207. Part of the Act’s enforcement mechanism allows employees to recover all unpaid wages plus an equal amount in liquidated damages for any violation of its wage and hour provisions. 29 U.S.C. § 216(b). Although nationwide in scope, the F.L.S.A. does not cover all employees. See 29 U.S.C. § 203(e); 29 U.S.C. § 213.
In 1971, the Montana Legislature enacted the Minimum Wage and Maximum Hour Act. Like the federal Act, the M.W.M.H.A. ensures workers a minimum living standard by setting minimum hourly wages, § 39-3-404, MCA, and maximum allowable work hours per week, § 39-3-405, MCA. Also like the F.L.S.A., the M.W.M.H.A. allows employees to recover unpaid wages plus up to 100% in liqui *95 dated damages, § 39-3-407, MCA; § 39-3-206, MCA. In Plouffe v. Farm & Ranch Equipment Co. (1977), 174 Mont. 313, 570 P.2d 1106, this Court held that in passing the F.L.S.A., Congress declined to preempt the entire field of wage and hour regulation. Therefore, employees not covered by the F.L.S.A. gained analogous rights from the M.W.M.H.A. Plouffe, 174 Mont. at 319-20, 570 P.2d at 1109. The federal and Montana Acts differ, however, in one important aspect.
Nine years after passing the F.L.S.A., Congress determined that expansive judicial interpretation of the federal Act had placed “wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers . . . .” 29 U.S.C. § 251(a). To correct the situation, Congress passed the Portal to Portal Act giving employers a good faith defense to wage claims.
“In any action . . no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written . . . interpretation of [the Administrator of the Wage and Hour Division of the Department of Labor]. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such . . . interpretation ... is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.”
29 U.S.C. § 259. Similarly, if the employer satisfies the court that it believed in good faith that the act or omission complained of was not a violation of the F.L.S.A., the P.P.A. authorizes the court to reduce or eliminate liquidated damages. 29 U.S.C. § 260.
In the present case, the parties do not dispute that the claimants are subject to the F.L.S.A. Enterprises covered by the F.L.S.A. include:
“[A]n institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution ...”
29 U.S.C. § 203(r)(1). There is also no doubt that the P.P.A.’s good faith defense protects Region II. Although it did not apply the Portal to Portal Act, the Department did find as a conclusion of law that Region II had relied on the written interpretations of the Administrator of the Wage and Hour Division of the Department of Labor found in the White and Cohen letters in formulating its over *96 night policies. This reliance satisfies the requirements of the good faith defense thereby barring the claims under the F.L.S.A. The issue now is whether the claimants can fall back on the M.W.M.H.A. to recover wages and liquidated damages for their sleep time.
The District Court relied on one F.L.S.A. provision to find that they could. The federal Act defers to state laws which provide greater benefits.
“No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law . . . establishing a minimum wage, higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter . . .”
29 U.S.C. § 218(a). The District Court reasoned that since the claims are barred by the P.P.A. good faith defense, the claimants are entitled to no benefit under the federal law. Montana law has no provision comparable to the P.P.A. good faith defense and, therefore, provides the claimants with a higher minimum wage. According to F.L.S.A. section 218(a), therefore, the M.W.M.H.A. should apply to the wage claims.
The District Court, however, failed to consider the effect of a limiting provision in the Montana Act; the M.W.M.H.A. explicitly excludes employees covered by the federal Act.
“The provisions of [the M.W.M.H.A.] shall be in addition to other provisions now provided by law for the payment and collection of wages and salaries but shall not apply to employees covered by the Fair Labor Standards Act.”
Section 39-3-408, MCA (1985). (Emphasis added.) The Montana law defers to the federal law while the federal law defers to the Montana law. Like two overly-polite gentlemen standing before a single door, the State and federal provisions are caught in a classic “you first” impasse.
Both parties and five amici curiae have extensively briefed and argued this issue. Most of the authority offered, however, does not solve the current impasse and leaves this issue a question of first impression.
In Glick v. Department of Institutions (1973), 162 Mont. 82, 509 P.2d 1, cert. den. 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106, we relied on Montana law to determine the number of hours necessary to trigger overtime compensation, Glick, 162 Mont. at 89, 509 P.2d at 5, but applied the F.L.S.A. in determining liquidated damages, Glick, 162 Mont. at 90-91, 509 P.2d at 6. This case provides no guid *97 anee on the present issue because we did not apply the M.W.M.H.A. We relied instead on the Montana constitutional and statutory provisions guaranteeing an eight-hour work day. Glick, 162 Mont. at 86-87, 509 P.2d at 4.
In Plouffe v. Farm Ranch Equipment Co., the F.L.S.A. exempted the employer from federal wage regulation. We held that by enacting F.L.S.A. § 218, Congress declined to preempt the entire field of wage and hour regulations and, therefore, the employee could still rely on the M.W.M.H.A. Plouffe, 174 Mont. at 319-20, 570 P.2d at 1109. Because the F.L.S.A. never applied to the employee, we did not need to decide if the employee was covered by both the federal and the Montana Acts.
In State v. Holman Aviation Co. (1978), 176 Mont. 31, 575 P.2d 923, the issue was whether M.W.M.H.A. § 408 prevented the State as assignee from pursuing an F.L.S.A. employee’s wage claim under the Montana Wage Payment Act. The parties asked this Court to consider the effect of M.W.M.H.A. § 408’s limiting provision on F.L.S.A. claims, but we did not reach that issue. We held only that § 408 does not apply to acts other than the M.W.M.H.A., but noted in passing that the section
“by its plain meaning provides merely that the provisions of this act . . . shall be applicable to set minimum wages and maximum hours for certain Montana employees in occupations not covered by the F.L.S.A., and that the F.L.S.A. shall apply to those employees which the federal act specifies.”
Holman Aviation, 176 Mont. at 34, 575 P.2d at 925. (Quotations omitted.)
Following Plouffe and Holman Aviation, the Montana Attorney General issued an opinion on whether state and local government employees are covered by both M.W.M.H.A. and F.L.S.A. 41 Op. Mont. Att’y Gen. No. 58 at 240 (1986). In concluding that they are not, the Attorney General relied on the plain meaning of M.W.M.H.A. § 408, the above quoted statement from Holman Aviation, and the 1973 Legislature’s refusal to amend the limiting provision of M.W.M.H.A. § 408 to read “shall not apply to employees covered by the Fair Labor Standards Act, provided that act requires a higher standard.” H.B. 279, 43rd Leg. (1973) (text available from the Archives of the Mont. Historical Society; emphasis indicates proposed addition). Interpretations of the law by the executive branch provide persuasive authority when acquiesced in by the legislature. Cornwall v. Department of Justice (Mont. 1988), 231 Mont. *98 58, 64-66, 752 P.2d 135, 139, [45 St.Rep. 429, 435]. In this case, however, the legislature did not acquiesce in the opinion, but, as is noted below, acted in 1987 to reverse its effect.
Like Montana authority, cases from other jurisdictions provide little authority for resolving the present impasse, though two cases deserve mention.
In Cosme Nieves v. Deshler (1st Cir. 1986) 786 F.2d 445, cert. den. 479 U.S. 824, 107 S.C. 96, 93 L.Ed.2d 47, the federal court considered whether F.L.S.A. § 218(a) allowed civilian employees of the federal government covered by the F.L.S.A. to .bring wage claims under the more beneficial provisions of Puerto Rican law. The court held against the claimants because the commonwealth law specifically excluded federal employees. Cosme Nieves, 786 F.2d at 452 (citing P.R. Laws Ann. tit. 29 § 246e(a)(2)). While superficially similar to the present case, Cosme Nieves is distinguishable; the claimants in that case were not barred from bringing their claims under the F.L.S.A. Cosme Nieves, 786 F.2d at 453.
In Webster v. Bechtel Inc. (Alaska 1980), 621 P.2d 890, the Alaska Supreme Court considered whether the F.L.S.A.' preempted the Alaska Wage and Hour Act. In holding that it did not, the court found no conflict between the liquidated damages provisions of the state and federal acts because the Alaska act contained no good faith defense similar to that in the Portal to Portal Act. The court noted that the provisions are complementary; the Alaska statute would provide greater benefits furthering the purposes of F.L.S.A. § 216(b). Webster, 621 P.2d at 904. The same analysis would apply to the present case if not for the limiting provision of M.W.M.H.A. § 408. Webster is distinguishable from the present case in that the Alaska act does not exclude employees covered by F.L.S.A, as does M.W.M.H.A. § 408. See Alaska Stat. §§ 23.10.050 through .150.
Like case law, public policy considerations are insufficient to solve the issue. Policy considerations weigh heavily on both sides. The obvious intent of both the F.L.S.A. and the M.W.M.H.A. is to ensure the health, efficiency, and general welfare of employees through enhancement and protection of wages and reasonable work-hour requirements 29 U.S.C. § 202; § 39-3-401, MCA. Allowing F.L.S.A. employees to fall back on the M.W.M.H.A. when the federal law bars their claims would increase the protection of the present claimants and similarly situated employees.
On the other hand, extending M.W.M.H.A. protection to F.L.S.A. employees would have serious adverse consequences. In passing the *99 good faith defenses of the Portal to Portal Act, Congress recognized that without amendment, F.L.S.A. claims would “bring about [the] financial ruin of many employers . . . curtailing employment, and the earning power of employees . . . .” 29 U.S.C. § 251(a)(1). A number of amici curiae argued that these same results will occur in Montana if group home operators are forced to pay greater wages for overnight periods. The effect in this time of fiscal restraint is likely to be fewer employees and a curtailment in services to a deserving clientele.
Although much of the authority presented by the parties and the amici curiae does not resolve the question, the language of the Montana statute is determinative. The judicial function in construing statutes is to give effect to the intention of the legislature. Legislative intent is determined by first looking to the plain meaning of the statute. Thiel v. Taurus Drilling Ltd. (1985), 218 Mont. 201, 205, 710 P.2d 33, 35. Section 39-3-408, MCA (1985), clearly states that the M.W.M.H.A. “shall not apply to employees covered by the Fair Labor Standards Act.” In passing F.L.S.A. § 218(a), Congress gave the states the option of providing more beneficial wage and hour protection than that available under the federal law. The Montana legislature explicitly declined to exercise that option for employees already protected by the F.L.S.A.
To hold that the limiting provision of M.W.M.H.A. § 408 does not prohibit the application of the M.W.M.H.A. to F.L.S.A. employees would be to hold that it is superfluous. In interpreting a statute, we may not ignore what is found in it, § 1-2-101, MCA, but must endeavor to give effect to each provision of the statute, Darby Spar, Ltd. v. Department of Revenue (1985), 217 Mont. 376, 379, 705 P.2d 111, 113. If the legislature intended to allow F.L.S.A. employees to also take advantage of the M.W.M.H.A., the limiting provision of M.W.M.H.A. § 408 would not have been necessary; F.L.S.A. § 218(a) already serves that function. When it acts, the legislature is presumed to have full knowledge of existing laws, Thiel, 218 Mont. at 207, 710 P.2d at 36, and is presumed to have intended to change those laws, Cantwell v. Geiger (1987), 228 Mont. 330, 333-34, 742 P.2d 468, 470. Therefore, we must assume that the legislature was aware that F.L.S.A. § 218(a) would allow F.L.S.A. employees to fall back on the M.W.M.H.A. when it provided greater benefits. And we must assume that by enacting the limiting provision of M.W.M.H.A. § 408, the legislature acted to counter the effect of F.L.S.A. § 218(a).
The 1971 Legislature’s intent to exclude F.L.S.A employees from *100 M.W.M.H.A. coverage is further evidenced by the recent amendment to M.W.M.H.A. § 408. The 1987 Legislature amended the section to provide that the minimum wage provisions of the M.W.M.H.A. “shall apply to an employee covered by the Fair Labor Standards Act if state law provides a minimum wage that is higher than the minimum wage established under the federal law.” Act approved April 9, 1987, ch. 446, § 2, 1987 Mont. Laws 1012. Again presuming that the Legislature intended to change the law, the pre1987 version of the Montana law under which the present wage claims arose must have excluded F.L.S.A. employees.
CONCLUSION
In passing the Portal to Portal Act, Congress noted that if it failed to amend the F.L.S.A., “employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay . . . .” 29 U.S.C. § 251(a)(4). This seems particularly true in the present case; the claimants were aware of the overnight policy when they agreed to work for Region II. Imposing an unexpected penalty upon Region II seems particularly inappropriate when the group-home operator formulated its overnight policy to conform with the government’s interpretation of the wage and hour laws.
We hold that § 39-3-408, MCA (1985), excludes the claimants from coverage under the Montana Minimum Wage and Maximum Hour Act. Any claim under the federal Fair Labor Standards Act is barred by 29 U.S.C. § 259 of the Portal to Portal Act because Region II relied in good faith upon the interpretations of the Administrator of the Wage and Hour Division of the United States Department of Labor in formulating its overnight policies. Because the claims are barred, we need not reach any other issue presented by either party. The claimants are not entitled to back wages, liquidated damages, costs, or attorney fees.
Reversed.
JUSTICES HARRISON, WEBER, BARZ and McDONOUGH concur.