No. 92-330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MACKLIN D. BERRY,

     Plaintiff and Appellant,

v.

KRTV COMMUNICATIONS, INC., d/b/a KRTV 3,

     Defendant and Respondent.

FILED

DEC 15 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patrick F. Flaherty (argued), Attorney
at Law, Great Falls, Montana

    For Respondent:

        Robert P. Goff and Jean E. Faure (argued),
Church, Harris, Johnson & Williams,
Great Falls, Montana

    For Amicus Curiae:

        Donald C. Robinson and J. Richard Orizotti
(argued), Poore, Roth & Robinson, Butte,
Montana (for Patrick Kearney)

        Daniel B. McGregor, Montana Department of
Labor and Industry, Helena, Montana

        Jerome T. Loendorf, Harrison, Loendorf &
Poston, Helena, Montana (for Montana Broadcasters)

               Submitted:  August 30, 1993

                  Decided:  December 15, 1993

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Macklin D. Berry commenced this action against defendant KRTV Communications, Inc., in the District Court for the Eighth Judicial District in Cascade County to recover overtime pay, bonuses, statutory penalties, and attorney fees from his employer. The District Court granted his employer's motion for summary judgment and dismissed plaintiff's claim with prejudice based on its conclusion that his claim for overtime pay was barred by the federal Fair Labor Standards Act (FLSA) and that he was not entitled to any bonus pay under the plain terms of his employment contract. Plaintiff appeals from the District Court's decision. We reverse in part, and affirm in part, the judgment of the District Court.

The following issues are presented on appeal.

1. Did the District Court err when it held that plaintiff was a covered employee under the Fair Labor Standards Act found at 29 U.S.C. §§ 201 through 219 (1988), and therefore, that he was not entitled to benefits for overtime work pursuant to § 39-3-405, MCA, of Montana's Minimum Wage and Maximum Hour Act?

2. Did the District Court err by holding as a matter of law that plaintiff was not entitled to bonus pay pursuant to the terms of his contract with his employer?

## FACTUAL BACKGROUND

In his complaint filed in the District Court on October 5, 1990, Berry alleged that he had been employed at KRTV, Inc., from 1986 through 1989 in various capacities. Principal among his

responsibilities, however, were news editing and announcing. He alleged that from July 29, 1986, through May 19, 1989, he worked in excess of 1211 overtime hours for which his employer had refused to compensate him at the appropriate rate for overtime work.

Berry also alleged that his contract with KRTV provided for a 14 percent bonus when the station's local news led its competition under certain circumstances, and that he had satisfied the conditions for the bonus, but that KRTV had refused to pay him.

Berry sought compensation for his overtime pay in the amount of $17,456.56, a bonus in the amount of $10,850.00, the statutory penalties provided for in Montana's wage statutes, and attorney fees.

In its answer to Berry's complaint, KRTV denied the substance of his allegations. However, more importantly for purposes of this appeal, it alleged that since he was employed as a news editor and announcer during his tenure at the station, it was not obligated to pay him overtime benefits under the terms of the federal FLSA.

On March 31, 1992, KRTV moved for summary judgment. In support of its motion, it offered affidavits from Donald G. Bradley, Patricia Roberts, and Peter Friden.

Bradley was president of KRTV Communications and stated that the defendant is licensed by the FCC as a television station with call letters KRTV. To establish that it was covered by the provisions of the federal FLSA, he stated that defendant had gross receipts from the operation of its station in excess of $500,000

3

per year, employed more than one employee, and was engaged in interstate commerce.

Bradley stated that under his ownership the station had employed Berry from December 18, 1986, until May 19, 1989, in various capacities, including bureau chief of the news department, news anchor, and reporter for the news department. He pointed out that his principal responsibilities in those positions included gathering and editing news, and acting as an announcer of news during the station's nightly news broadcasts.

Bradley stated that Berry's eligibility for bonus pay was limited by the terms of his written contract for employment, a copy of which was attached to his affidavit. The written contract of employment provided in relevant part as follows:

> KRTV will pay you a bonus of 14 percent of your base pay when our local news at 5:30 and 10:00 p.m. leads our competition. Determination will be based on ratings and shares in the DMA [designated market area] according to the same ratings service (Nielsen or Arbitron), for two consecutive rating periods.

Bradley stated that KRTV's competition were stations known by the call letters KFBB and KTGF, and attached copies of Nielsen and Arbitron ratings during the period of Berry's employment which established that at no time during that employment did KRTV lead both stations for two consecutive rating periods.

Patricia Roberts was an employee of the Montana Department of Commerce whose affidavit was offered to establish that the population in Great Falls, according to the 1990 census, was 55,097 people, and that the population of the Great Falls metropolitan

4

statistical area (coextensive with Cascade County) was 77,691 people. As will be pointed out later in this opinion, these figures were relevant to determination of whether Berry was covered by, or exempted from, terms of the federal FLSA.

Peter Friden stated that he was the general manager of KRTV during part of the time that Berry was employed there and further described the nature of Berry's work for the station.

In opposition to his employer's motion for summary judgment, Berry did not offer facts to controvert those offered by KRTV. Instead, he contended that, based on those undisputed facts, he was entitled to overtime pay pursuant to Montana's Minimum Wage and Maximum Hour Act found at §§ 39-3-401 through -409, MCA, and our decision in *Plouffe v. Farm & Ranch Equipment Company* (1977), 174 Mont. 313, 570 P.2d 1106. He also argued that a reasonable interpretation of the bonus provision in his employment contract was that it entitled him to a bonus if KRTV led either of its competitors in the ratings for two consecutive rating periods, and that it had, in fact, done so.

The District Court granted KRTV's motion for summary judgment by its decision entered on May 6, 1992. In support of that decision, the court found as fact those statements made in the previously discussed affidavits. The only findings of fact challenged by Berry on appeal are findings numbered 11 and 13. In Finding No. 13, the District Court found that Berry's "competition" was both of the other television stations in Great Falls. In Finding No. 11, the District Court found that Berry did not meet

5

the requirements for a bonus during the period of his employment with KRTV.

Based on these findings, the District Court concluded that KRTV is an employer in an enterprise engaged in commerce as those terms are defined in the FLSA at 29 U.S.C. §§ 203(d) and 203(s)(1) (1988), and that Berry was an employee as defined in 29 U.S.C. § 203(e) (1988). The District Court concluded that, although covered by the FLSA, KRTV was not required to pay Berry overtime benefits under that Act based on the exemption provided in 29 U.S.C. § 213(b)(9) (1988), which pertains to announcers and news editors. However, because of its conclusion that Berry was covered under the federal Act, the court concluded that he was entitled to no overtime benefits pursuant to § 39-3-408, MCA, in the Montana Act.

The District Court concluded that its decision was not controlled by our decision in *Plouffe*, but rather by our more recent decision in *Wage Claims of Stewart v. Child and Family Services* (1990), 242 Mont. 88, 788 P.2d 913.

Based on these findings and conclusions, Berry's complaint was dismissed with prejudice and judgment was entered in favor of KRTV.

### STANDARD OF REVIEW

This Court reviews an order of summary judgment by utilizing the same criteria used by a District Court initially under Rule 56, M.R.Civ.P. *Minnie v. City of Roundup* (1993), 257 Mont. 429, 849 P.2d 212. Pursuant to Rule 56(c), summary judgment is proper when no

genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.

## I.

Did the District Court err when it held that plaintiff was a covered employee under the Fair Labor Standards Act found at 29 U.S.C. §§ 201 through 219 (1988), and therefore, that he was not entitled to benefits for overtime work pursuant to § 39-3-405, MCA, of Montana's Minimum Wage and Maximum Hour Act?

In this case, we are once again called upon to construe the relationship of the federal FLSA and the Montana Minimum Wage and Maximum Hour Act. We have had occasion to do so previously in both *Plouffe*, 570 P.2d 1106, and *Stewart*, 788 P.2d 913. In *Stewart*, we summarized the history and purpose of both Acts as follows:

> In 1938, Congress passed the Fair Labor Standards Act to prevent the use of unfair trade practices in interstate commerce leading to "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers. . . ." 29 U.S.C. § 202(a). To ensure a minimum living standard, the F.L.S.A. establishes a minimum hourly wage, 29 U.S.C. § 206, and a maximum workweek without overtime compensation, 29 U.S.C. § 207. Part of the Act's enforcement mechanism allows employees to recover all unpaid wages plus an equal amount in liquidated damages for any violation of its wage and hour provisions. 29 U.S.C. § 216(b). Although nationwide in scope, the F.L.S.A. does not cover all employees. See 29 U.S.C. § 203(e); 29 U.S.C. § 213.
>
> In 1971, the Montana Legislature enacted the Minimum Wage and Maximum Hour Act. Like the federal Act, the M.W.M.H.A. ensures workers a minimum living standard by setting minimum hourly wages, § 39-3-404, MCA, and maximum allowable work hours per week, § 39-3-405, MCA. Also like the F.L.S.A., the M.W.M.H.A. allows employees to recover unpaid wages plus up to 100% in liquidated damages, § 39-3-407, MCA; § 39-3-206, MCA.

7

*Stewart*, 788 P.2d at 917.

The District Court held that because Berry was covered by the federal Act, he could not recover benefits for overtime work under the Montana Act based on § 39-3-408, MCA, which provides in relevant part that:

> (1)  The provisions of this part shall be in addition to other provisions now provided by law for the payment and collection of wages and salaries but shall not apply to employees covered by the Fair Labor Standards Act except as provided in subsection (2).

Subsection 2 pertains to minimum wages and is not applicable to this claim.  However, the District Court also concluded that while Berry was covered by the federal Act he was not entitled to compensation for overtime worked under that Act pursuant to 29 U.S.C. § 213(b)(9) (1988), which provides that:

> (b)  Maximum hour requirements.  The provisions of § 207 [29 U.S.C. § 207] shall not apply with respect to—
>
> . . . .
>
> (9)  Any employee employed as an announcer, news editor, or chief engineer by a radio or television station the major studio of which is located (A) in a city or town of one hundred thousand population or less, according to the latest available decennial census figures as complied by the Bureau of Census, except where such city or town is part of a standard metropolitan statistical area, as defined and designated by the Office of Management and Budget, which has a total population in excess of one hundred thousand . . . .

On appeal, Berry contends that pursuant to 29 U.S.C. § 213(b)(9) (1988), he was not covered under the FLSA, and therefore, pursuant to our decision in *Plouffe*, he was entitled to the overtime protection provided for in Montana's Minimum Wage and

8

Maximum Hour Act. He concludes that, since under the Montana Act there is no exemption for news announcers or editors, he is entitled to overtime pay.

The Montana Department of Labor and Industry has filed an amicus brief in which it concurs with Berry's position.

KRTV responds that because it is an employer covered by the FLSA, according to criteria set forth in 29 U.S.C. § 203 (1988), its employees are also covered by the terms of the Act. Its argument continues that since it is covered under the federal Act, the Montana law regarding overtime wages is not applicable pursuant to § 39-3-408, MCA, of the Montana Act which excludes from coverage employees covered by the federal FLSA. Finally, it contends that, even though covered by the federal Act, Berry is entitled to no benefits for overtime work under that Act because of the exemption provided for in 29 U.S.C. § 213(b)(9) (1988), and that the necessity of this conclusion is established by our decision in *Stewart*.

We conclude that the facts in this case are more similar to those in the *Plouffe* case than in the *Stewart* case, and therefore, that *Plouffe* controls our decision.

In *Plouffe*, the plaintiff was a former employee of the defendant who worked as a farm equipment mechanic for a business engaged in the sale and repair of farm equipment. He sued to recover overtime wages and vacation pay pursuant to Montana's Minimum Wage and Maximum Hour Act, now codified at §§ 39-3-401 through -409, MCA.

9

His employer defended on the basis that his claim under the Montana Act was preempted by the federal FLSA and that under the federal Act it was exempt from an obligation to pay him overtime benefits. In that case, the employer relied on the very next subsection of 29 U.S.C. § 213(b) (1988) after the one relied on in this case. It provided:

> (b) Maximum hour requirements. The provisions of § 207 [29 U.S.C. § 207] shall not apply with respect to--
>
> . . . .
>
> (10)(A) any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a non-manufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers . . . .

As in this case, the district court in *Plouffe* concluded that, by the nature of its business, that employer was exempt from the requirements of Montana's Minimum Wage and Maximum Hour Act and dismissed plaintiff's complaint. However, on appeal, relying on 29 U.S.C. § 213(b)(10) (1988), we held that the FLSA expressly exempted the employer in this case from paying overtime wages to the plaintiff, and therefore, that the employer was not exempt from payment of overtime wages under the Montana Minimum Wage and Maximum Hour Act.

In arriving at our decision in *Plouffe*, we concluded that there was an express intent by our national Congress not to preempt the field of wage and hour regulation through the enactment of 29 U.S.C. § 218 (1988), which provides in relevant part that:

10

(a)  No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum work week established under this chapter . . . .

We concluded that since the class of employees to which *Plouffe* belonged was exempted from the maximum hour protection of the federal FLSA, and since § 218 of the Act specifically authorized states to enact stricter standards for wages and maximum hours, that:

[T]he Fair Labor Standards Act does not preempt the subject of wage, hour or overtime regulation to the exclusion of Montana's Minimum Wages and Hours Act . . . .

*Plouffe*, 570 P.2d at 1109.

In our review of *Plouffe*, we note that we expressly stated:

We hold that the federal Fair Labor Standards Act expressly exempts the employer in this case from paying overtime wages to plaintiff.  Section 207 of the Fair Labor Standards Act provides that no employer shall employ any of his employees for a workweek longer than 40 hours unless such employee receives time and a half his regular rate of pay for the excess.  Section 213 provided:

"*Exemptions* . . .

"(b) The provisions of Section 207 of this title shall not apply with respect to-- . . .

"(10) *Any* salesman, partsman, or *mechanic primarily engaged in* selling or *servicing* automobiles, trailers, trucks, *farm implements,* or aircraft *if employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles to ultimate purchasers.*"
. . . .

This exemption from payment of overtime wages clearly applies under the admitted facts of this case.

11

*Plouffe*, 570 P.2d at 1107. However, in our concluding summary, we stated as follows:

> In summary, we hold that the Fair Labor Standards Act does not preempt the subject of wage, hour or overtime regulation to the exclusion of Montana's Minimum Wages and Hours Act; that the employer here is not exempt from payment of overtime wages under either the Fair Labor Standards Act exemption or Montana's Minimum Wages and Hours Act . . . .

*Plouffe*, 570 P.2d at 1109.

It must be kept in mind that a principal issue in *Plouffe* was whether the claimant was precluded from coverage under the State Act based on the doctrine of federal preemption. The employer in that case argued that he was exempt from payment of overtime benefits under either state or federal law because the exemption in federal law preempted coverage under the state law. However, after discussing § 218 of the FLSA, we concluded there was no preemption, and that is what was referred to in our summary paragraph when we stated that the employer was not exempt from payment of overtime wages under the federal Act. While unartfully stated, that section clearly referred to the employer's federal preemption argument. In order that there may be no misunderstanding from *Plouffe*, we expressly construe the opinion in *Plouffe* to mean that the federal FLSA exempted the employee from coverage.

The concurring opinion criticizes *Plouffe* for not discussing § 39-3-408, MCA. However, that section was not raised by the employer as a defense in that case. It makes no difference. Section 39-3-408, MCA, is simply a codification of federal

12

preemption, and by resolving the issue of federal preemption, the *Plouffe* case addressed the very same issue that is raised in this case pursuant to § 39-3-408, MCA.

KRTV argues that our decision in *Plouffe* should not control the outcome of this case because 15 years has passed since that decision; its result is questionable in light of our decision in *Stewart*; and the effect of § 39-3-408, MCA, was not discussed in *Plouffe*. First, we note that the passage of time has not changed the statutory law relied on in *Plouffe*, nor the necessary conclusions from its application. Second, we conclude that § 39-3-408, MCA, does not pertain to Berry because pursuant to the exemption provided for in 29 U.S.C. § 213(b)(9) (1988), he is not an employee covered by the FLSA with regard to overtime payment. Finally, the facts in our decision in *Stewart* are clearly distinguishable from this case.

In *Stewart*, the plaintiffs were employees of a defendant corporation which provided residential care facilities for the developmentally disabled and multiply handicapped. The duties required that they spend overnight on their employer's premises. However, if they received five consecutive hours of uninterrupted sleep, they were compensated for only the time they spent attending to clients. If they did not receive five consecutive hours of uninterrupted sleep, they were paid for the entire overnight period. The employer established this policy in reliance on

13

opinions from employees of the Wage and Hour Division of the United States Department of Labor.

The claimants in the *Stewart* case filed claims for the time spent on their employer's premises when they were sleeping and uncompensated. In defense to the employees' claims, the defendant in *Stewart* argued that since it had been advised by a government official that it was complying with the law, it had an affirmative defense to its employees' claims pursuant to the good faith defense provided by the Portal-to-Portal Act codified at 29 U.S.C. §§ 216, 251 through 262 (1988). The District Court concluded that if the claims were barred under the federal Act, then there was coverage under Montana's Minimum Wage and Maximum Hour Act. On appeal, we reversed based on a distinction between lack of coverage under the federal Act and an affirmative defense to a claim under the federal Act. Significantly, we noted that "[i]n the present case, the parties do not dispute that the claimants are subject to the F.L.S.A." *Stewart*, 788 P.2d at 918. We distinguished *Plouffe* on the grounds that the employee in that case was not covered by the Act. We noted that:

> In *Plouffe v. Farm & Ranch Equipment Co.*, the F.L.S.A. exempted the employer from federal wage regulation. We held that by enacting F.L.S.A. § 218, Congress declined to preempt the entire field of wage and hour regulations and, therefore, the employee could still rely on the M.W.M.H.A. *Plouffe*, 174 Mont. at 319-20, 570 P.2d at 1109. Because the F.L.S.A. never applied to the employee, we did not need to decide if the employee was covered by both the federal and the Montana Acts.

*Stewart*, 788 P.2d at 919.

14

Finally, we concluded that since the employees in *Stewart* were covered by the federal Act, and since the employer in *Stewart* had satisfied the good faith affirmative defense as a matter of law by relying on interpretations of the Administrator of the Wage and Hour Division of the United States Department of Labor in formulating its overnight policies, the employees' claims were barred.

In summary, *Stewart* is distinguishable from the present case because the parties in that case did not dispute that the employees were covered by the FLSA; they were not the subject of specific exemption from coverage under the FLSA; and Berry is the subject of special exemption pursuant to 29 U.S.C. § 213(b)(9) (1988) which, as we pointed out in *Stewart*, requires the conclusion that the FLSA did not apply to him.

We conclude that the Legislature's intent to provide greater overtime protection for the class of employees to which Berry belongs is further evident from an examination of Montana's statutory exemptions in comparison to the federal exemptions.

The federal exemptions from overtime protection are found at 29 U.S.C. § 213(b) (1988) and currently include 20 classifications of employees.

The Montana exclusions are found at § 39-3-406(2), MCA, and include 22 classifications of employees which are, for the most part, patterned after their federal counterparts. Notably, however, Montana did not adopt the exclusion found at 29 U.S.C.

15

§ 213(b)(9) (1988) which pertains to news editors and announcers employed by television stations.

Therefore, we conclude that pursuant to the exemption found at 29 U.S.C. § 213(b)(9) (1988), Berry was not covered by the federal FLSA with regard to compensation for hours worked over 40 hours per week while he was employed at KRTV. We furthermore conclude that when the Legislature of this State adopted Montana's Minimum Wage and Maximum Hour Act, it was aware of the exemptions provided for in the federal Act and chose to provide a maximum work week for employees in Berry's classification which is lower than the maximum work week provided for under the federal FLSA. Therefore, pursuant to 29 U.S.C. § 218 (1988), Montana is not preempted from providing overtime protection to Berry, and he is entitled to overtime compensation pursuant to § 39-3-405, MCA.

## II.

Did the District Court err by holding as a matter of law that plaintiff was not entitled to bonus pay pursuant to the terms of his contract with his employer?

Berry was entitled to a bonus during the period of his employment with KRTV when KRTV led its competition for two consecutive rating periods. Berry contends that either of the other two television stations in Great Falls was KRTV's competition, and therefore, if KRTV led either of them for two consecutive rating periods, he was entitled to a bonus. He relies on § 28-3-206, MCA, which provides that language of a contract,

16

when unclear, should be interpreted against the party who caused the uncertainty to exist.

KRTV responded, and the District Court agreed, that pursuant to our decision in *Morning Star Enterprises v. R.H. Grover* (1991), 247 Mont. 105, 805 P.2d 553, an ambiguity in a contract does not exist unless the contract is subject to two different interpretations and that the language in Berry's contract is clear and unambiguous. KRTV cites the definition for "competition" from the American Heritage Dictionary where it is defined as "the rivalry between businesses driving for the same customer or market."

Other than the general rules for construction referred to previously, neither party has cited any authority which directly resolves the dispute over this term in their contract. We are left to determine, as a matter of law, whether the term "competition," when used to refer to business competitors, means all of those competitors or can pertain to each competitor individually. We look for guidance to Webster's Ninth New Collegiate Dictionary 268 (1984) where competition, in the sense that it is used in this contract, is defined as "one's competitors."

Black's Law Dictionary, while not discussing "competition" as a description of persons or parties, refers to it as:

> Rivalry. The play of contending forces ordinarily engendered by an honest desire for gain. The effort of two or more parties, acting independently, to secure the custom of a third party by the offer of the most favorable terms. It is the struggle between rivals for the same trade at the same time; the act of seeking or endeavoring to gain what another is endeavoring to gain at the same time. [Citations omitted].

17

Black's Law Dictionary 355-56 (4th ed. 1968).

We conclude, based on the general usage suggested by the previous authorities, that when used in a commercial setting the term "competition" refers to all those persons or parties competing for the same trade or economic interest. For that reason, we affirm the District Court's conclusion that KRTV's "competition," as referred to in its contract of employment with Berry, included the Great Falls television stations known by the call letters KFBB and KTGF, and that based upon the uncontroverted documentation provided by KRTV, it did not lead its "competition" for two consecutive rating periods during Berry's period of employment with that station.

Based upon these conclusions, we affirm the District Court's judgment which dismissed Berry's claim for payment of a bonus pursuant to the terms of his contract with KRTV, and we reverse that part of the District Court judgment which dismissed Berry's claim for overtime pay pursuant to the Montana Minimum Wage and Maximum Hour Act.

_____
Justice

We concur:

_____

_____

18

_____

_____

_____

_____
Justices

District Court Judge John W. Larson specially concurring.

Although the majority's result is correct, it is useful to track the Legislature's actions since *Plouffe* does not address § 39-3-408, MCA, the pivotal statute in the case at bar.

*Plouffe* does not raise, nor does it address, the effect of § 39-3-408, MCA, which provides that the overtime pay provision of § 39-3-405, MCA, "shall not apply to employees covered by the Fair Labor Standards Act except as provided in subsection (2)." Subsection (2) is inapplicable in this case. The issue in the case at bar, therefore, is whether plaintiff is "covered by the FLSA." *Plouffe* does not address the definition of "covered" as used in § 39-3-408(1), MCA, despite the fact that at the time *Plouffe* was decided, the predecessor to § 39-3-408(1), MCA, provided that Montana's minimum wage, maximum hours, and overtime pay provisions "shall not apply to employees covered" by the FLSA. Section 41-2307, R.C.M. 1947. *Plouffe*, then, did not consider a statute that was highly relevant to the case at bar.

Because *Plouffe* is unhelpful, and *Stewart* is distinguishable from the present case, as noted by the majority, the Court must fall back on the legislative history of Montana's minimum wage and overtime compensation provisions as contained in §§ 39-3-401 through -409, MCA, to determine whether the Legislature intended news editors, such as plaintiff, to be entitled to overtime pay.

As noted by the majority, § 39-3-406, MCA, contains numerous exclusions to Montana's overtime pay provisions, most of which are

20

patterned on the exclusions in the FLSA. The Montana Legislature has amended § 39-3-406, MCA, six times since 1981, including most recently, in the 1993 regular legislative session. These amendments added a total of twelve exclusions to the statute, none of which relate to news editors employed by television stations in small cities. Thus, despite the fact that the FLSA contains a specific exclusion for such news editors, and despite ample opportunity to do so, the Legislature has never chosen to incorporate that exclusion in the Montana statute. The only possible conclusion is that the Legislature has specifically decided not to exclude news editors in small cities from coverage by the Montana overtime pay provisions.

Thus, the majority is correct in holding that the FLSA does not cover plaintiff in this particular case, and that since plaintiff is not excluded from the Montana overtime pay provisions, plaintiff is entitled to overtime pay pursuant to the Montana provisions.

_____
District Judge John W. Larson,
sitting for Justice James C. Nelson

Chief Justice Turnage and Justice Gray join the foregoing special concurrence.

_____
Chief Justice

_____
Justice

21