NO.   93-223

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994


PATRICK KEARNEY,

          Plaintiff, Respondent,
          and Cross-Appellant,

     v.

KXLF COMMUNICATIONS, INC.,
a Montana Corporation,

          Defendant and Appellant.


APPEAL FROM:   District Court of the Second Judicial District,
               In and for the County of Silver Bow,
               The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               R. D. Corette and Gregory C. Black,
               Corette, Pohlman, Allen, Black & Carlson,
               Butte, Montana

               S. M. Fallis, Jr., and Tom Robertson,
               Nichols, Wolfe, Stamper, Nally & Fallis, Inc.,
               Tulsa, Oklahoma

          For Respondent:

               Donald C. Robinson and J. Richard Orizotti,
               Poore, Roth & Robinson, Butte, Montana


FILED

FEB 17 1994

Filed:
          Ed Smith
     CLERK OF SUPREME COURT
         STATE OF MONTANA

                                        Clerk

Submitted on Briefs:  January 7, 1994

Decided:  February 17, 1994

Justice Terry N. Trieweiler delivered the opinion of the Court.

Patrick Kearney commenced this action in the District Court for the Second Judicial District in Silver Bow County alleging that he was wrongfully discharged from employment and was entitled to overtime compensation, statutory penalties, and attorney fees. Following an eight-day jury trial in Bozeman, the jury returned a verdict in favor of Kearney on the claim for overtime compensation. However, judgment was entered in favor of Kearney's employer, KXLF Communications, Inc., on the wrongful discharge from employment claim. The court awarded certain costs and attorney fees to Kearney, and denied costs and attorney fees to KXLF. KXLF and Kearney appeal.

We affirm in part, and reverse in part, the judgment of the District Court.

The following issues are presented on appeal:

1. Did the District Court err when it denied KXLF's motions for summary judgment and for a directed verdict dismissing Kearney's overtime compensation claim?

2. Did the District Court err when it held that a five-year statute of limitations applied to Kearney's overtime compensation claim?

3. Did the District Court err when it refused to award attorney fees to KXLF pursuant to the arbitration provisions of the Wrongful Discharge from Employment Act?

2

4. Did the District Court improperly award certain court costs to Kearney?

5. Did the District Court err when it directed a verdict against Kearney dismissing his claim that KXLF had violated the express provisions of its own written personnel policy?

Plaintiff Patrick Kearney was hired as a news reporter in 1981 by KXLF, the Butte station of the MTN television network. In 1986, Xearney was promoted to the position of news director by his supervisor, Eon Cass, General Manager of KXLF. At that time, KXLF was one of four MTN television stations in Montana owned by SJL of Montana Associates. In December 1986, Evening Post Publishing Company purchased all of the MTN television stations except the Billings station, and formed KXLF Communications, Inc. (KXLF), to operate Station KXLF in Butte.

News broadcasts for the MTN network originated primarily from Station KTVQ in Billings. The main segment of the news was broadcast statewide by KTVQ, and each of the local studios produced a short local segment of the newscast. The broadcast was then returned to KTVQ for statewide coverage of weather and sports. As the news director at KXLF, Kearney was responsible for story selection, reporting, production, and editing of the local segment of the newscasts.

When Evening Post purchased KXLF, the broadcasts continued to originate from Billings under the existing MTN network news agreement. However, in 1988, KXLF management made the decision to

convert to a completely local news broadcast. Implementation of this plan required the purchase of new equipment and increased responsibilities for the director of the news department.

Although Kearney anticipated continuing as news director, Cass testified that he believed Kearney would not be able to handle the increased duties and responsibilities. According to Cass, this was due to Kearney's history of conflicts with other staff members and problems controlling his temper. On December 6, 1988, Cass notified Kearney that he was removing him as news director and offered him the position of sports director. Kearney notified Cass the following day that he would not accept the demotion to sports director and thereby terminated his employment with KXLF.

In a complaint filed in the District Court on December 5, 1989, against Evening Post and Ron Cass, Kearney alleged that he had been constructively discharged from employment without good cause in violation of § 39-2-904(2), MCA, and that KXLF had violated the express provisions of its written personnel policy in violation of § 39-2-904(3), MCA. Kearney further alleged that he had worked in excess of 3626 overtime hours for which KXLF had not compensated him at the appropriate rate of pay. In addition to damages and overtime compensation, Kearney sought the statutory penalties provided for in Montana's wage statutes and attorney fees.

By amended complaint dated February 5, 1989, Kearney added KXLF as a defendant. The court later permitted Kearney to add a

4

claim for intentional interference with business relationships, naming SJL of Montana Associates and Kim Allen Nash of KTVQ in Billings as defendants.

At the close of discovery, all defendants moved for summary judgment. In an order issued on November 18, 1992, the court granted summary judgment to Evening Post and Cass, dismissing them from the action. KXLF's motion for summary judgment regarding the claims for wrongful discharge and overtime compensation was denied.

A jury trial commenced on November 23, 1992. At the conclusion of the eight-day trial, the court directed a verdict against Kearney and dismissed that part of his wrongful discharge claim which was based on a violation of the express provisions of the employer's own written personnel policy, but refused to direct a verdict on the claim for overtime compensation. The jury returned a verdict in favor of Kearney on the overtime claim in the amount of $48,986. In regard to the claim that Kearney had been constructively discharged without good cause, the jury returned a verdict in favor of KXLF. Finally, the jury found that Nash and SJL had not interfered with Kearney's business relationships.

In a judgment entered on January 14, 1993, Kearney was awarded overtime compensation plus the statutory penalty, for a total amount of $97,972. The court also awarded costs and attorney fees to Kearney and denied costs and attorney fees to KXLF. From this judgment, KXLF appeals.

Kearney cross-appeals from the court's directed verdict in favor of KXLF on the issue of whether KXLF violated the express provisions of its written personnel policy.

## ISSUE 1

Did the District Court err when it denied KXLF's motions for summary judgment and for a directed verdict dismissing Kearney's overtime compensation claim?

KXLF contends that the District Court should have dismissed the claim for overtime compensation on the basis that Kearney was a covered employee under the federal Fair Labor Standards Act (FLSA) found at 29 U.S.C. §§ 201through 219 (1988), and therefore, was not entitled to overtime compensation pursuant to § 39-3-405, MCA, of Montana's Minimum Wage and Maximum Hour Act. KXLF asserts that under § 213(b)(9) of the FLSA, a person employed as an announcer or news editor in a small market television station such as KXLF is exempt from overtime compensation benefits.

As conceded in KXLF's reply brief, however, we recently addressed this precise issue in *Berry v. KRTV Communications, Inc.* (Mont. 1993), 50 St. Rep. 1617. In *Berry*, we held that an employee in Kearney's position is not covered by the FLSA due to the exemption found at 29 U.S.C. § 213(b)(9) (1988). Furthermore, because Montana is not preempted from providing overtime protection according to 29 U.S.C. § 218 (1988), we held that an employee such as Kearney is entitled to overtime compensation under Montana's wage protection statute. *Berry*, 50 St. Rep. at 1622.

Therefore, pursuant to our decision in *Berry*, Kearney is entitled to benefits for overtime work as provided in Montana's Minimum Wage and Maximum Hour Act. The District Court did not err when it denied KXLF's motions to dismiss this claim.

## ISSUE 2

Did the District Court err when it held that a five-year statute of limitations applied to Kearney's overtime compensation claim?

Kearney filed his claim for overtime compensation on December 5, 1989. He sought benefits for the years 1987 and 1988. KXLF contends that the applicable statute of limitations for asserting an overtime claim should be two years, and that Kearney should not be awarded benefits for hours worked prior to December 5, 1987. This contention is based on § 27-2-211(1)(c), MCA, which establishes a two-year limitation for commencing actions when liability is created by a statute. In this instance, KXLF contends that liability was based on § 39-3-405, MCA, which requires employers to pay additional compensation for hours worked in excess of 40 hours during a workweek.

The District Court, however, found the applicable statute of limitations to be five years pursuant to § 27-2-202(2), MCA, and this Court 's decision in *Intermountain Deaconess Home v. State* (1981) ,191 Mont. 309, 623 P.2d 1384. In that case, we held that a five-year statute of limitations pertains to a wage dispute based on an oral contract of employment. *See also, Pope v. Keefer* (1979), 180 Mont. 454,

7

591 P.2d 206. Although KXLF recognizes this Court's conclusion in *Intermountain* and similar cases, it argues that those cases failed to properly analyze § 27-2-211, MCA.

The resolution of this issue requires us to reconcile inconsistent statutes of limitations, both of which have application to this situation. Kearney did perform services as an employee of KXLF pursuant to an oral contract of employment, and KXLF is liable for the payment of overtime wages to Kearney because of Montana's Minimum Wage and Maximum Hour Act.

In *Ritland v. Rowe* (Mont. 1993), 861 P.2d 175, 50 St. Rep. 1183, and *Thiel v. Taurus Drilling Ltd. 1980-II* (1985), 218 Mont. 201, 710 P.2d 33, we addressed the problem of inconsistent statutes of limitations. In *Ritland*, 861 P.2d at 178, we held that where a substantial question exists regarding which of two statutes of limitations should apply, the court should apply the general rule that "any doubt should be resolved in favor of the statute containing the longer limitation." This conclusion was in accord with the public policy recognized in *Thiel*, 710 P.2d at 40, which favors access to our courts and resolution of claims on their merits rather than the arbitrary bar of the statute of limitations.

We conclude that our decision in *Ritland* applies to this case. Because there is more than one applicable statute of limitations, the conflict was correctly resolved in favor of permitting Kearney's claim to be filed. The court did not err when it ruled

8

that a five-year statute of limitations applied to Kearney's claim for overtime compensation. '

## ISSUE 3

Did the District Court err when it refused to award attorney fees to KXLF pursuant to the arbitration provisions of the Wrongful Discharge from Employment Act?

Following the court's directed verdict and the jury verdict in favor of KXLF on Kearney's wrongful discharge claim, KXLF submitted a bill of costs which included a claim for attorney fees pursuant to § 39-2-914(4), MCA (1989), which provides as follows:

> A party who makes a valid offer to arbitrate that is not accepted by the other party and who prevails in an action under this part is entitled as an element of costs to reasonable attorney fees incurred subsequent to the date of the offer.

KXLF sought attorney fees under this section based on its offer to arbitrate Kearney's claim which was filed on January 31, 1990, and which was subsequently rejected by Kearney. KXLF contends that it prevailed in the wrongful discharge action, and therefore, is entitled to reasonable attorney fees because Kearney did not accept a valid offer to arbitrate.

Relying on this Court's decision in *Hoffman v. Town Pump* (1992), 255 Mont. 415, 843 P.2d 756, the District Court refused to award KXLF attorney fees under this section because no written arbitration agreement existed between the parties. KXLF contends that *Hoffman* was incorrectly decided and that § 39-2-914(4), MCA (1989), should be interpreted to cover all employment termination

9

claims, whether or not a written employment agreement contains an arbitration provision. To support its argument, KXLF notes that the Wrongful Discharge from Employment Act was amended in 1993 to delete the requirement of a written arbitration agreement before attorney fees could be awarded. Chapter 442, Montana Session Laws, 1993.

In *Hoffman*, *843* P.2d at 759, this Court analyzed the arbitration provisions of the Wrongful Discharge from Employment Act and held that the statute clearly requires a written agreement to arbitrate before attorney fees may be awarded. The amendments which were enacted in 1993 do not apply to the present case. It is undisputed that there was no written arbitration agreement between Kearney and KXLF. Therefore, based on our decision in *Hoffman, we* conclude that the court correctly refused to award KXLF attorney fees pursuant to this section.

### ISSUE 4

Did the District Court improperly award certain court costs to Kearney?

Following the jury trial, Kearney filed a memorandum of costs and requested the District Court to assess specific costs of suit against KXLF. The court awarded all costs as claimed by Kearney, except for certain paralegal and attorney fees. KXLF contends that the court erred when it awarded certain costs to Kearney and sets forth three bases for this claimed error.

10

KXLF first contends that Kearney was not the "prevailing party" in this suit for purposes of recovering costs allowed by statute because KXLF prevailed on the wrongful discharge claim, which it maintains was the primary issue in dispute. Furthermore, KXLF contends that even if Kearney is deemed the prevailing party, he is entitled to only those costs which are specifically provided for in § 25-10-201, MCA. Finally, KXLF alleges that the court erroneously failed to determine the proportion of expenses related to the overtime claim, as opposed to the wrongful discharge claim, and award only those costs actually related to the overtime claim.

Section 25-10-101(3), MCA, provides that costs of suit are allowed as a matter of course to the plaintiff upon a judgment in the plaintiff's favor in an action for damages when the amount recovered is over $50. Kearney clearly received an affirmative judgment in excess of $50. Although Kearney did not prevail on the wrongful discharge claim, this did not preclude the court from awarding costs associated with the litigation.

In *Medhus v. Dutter* (1979), 184 Mont. 437, 603 P.2d 669, this Court addressed the question of costs when a judgment is only partially favorable. We adopted the rule that if a plaintiff files a complaint in an action covered by § 25-10-101, MCA, and succeeds only partially, the plaintiff is entitled to costs. *Medhus*, 603 P.2d at 674. It is only in situations where a party initiates a law suit, the defendant counterclaims, and the judgment awards both parties part of the relief they seek, that the party prevailing on

11

the main issue in controversy in the case is entitled to recover costs. In this case, Kearney was the only party to file a complaint, and this resulted in entry of judgment in his favor on the claim that KXLF was liable for overtime compensation. Therefore, the District Court correctly determined that Kearney was entitled to his costs of suit pursuant to § 25-10-101, MCA.

We further note that the *Medhus* Court did not establish a rule that a plaintiff who is only partially successful must apportion litigation costs, and may recover only those costs associated with the relief granted. Neither has KXLF set forth any authority which would require the District Court to apportion costs in that manner. Because of the inherent difficulties and uncertainties that would result from such a requirement, we decline to adopt a rule which would require the court to apportion costs where only partial relief is granted.

KXLF challenges some of the specific costs awarded to Kearney on the basis that they are not provided for in the pertinent statute. We have reviewed the record with respect to these specific items and conclude as follows:

1. The depositions of Ron Cass, Al Nash, and Viola Vigil were used at trial, and therefore, are allowable costs. *Sage v. Rogers* (1993), 257 Mont. 229, 848 P.2d 1034: *Semenza v. Leitzke* (1988), 232 Mont. 15, 754 P.2d 509.

12

2. The additional deposition expenses related to Viola Vigil which were awarded are allowable costs pursuant to Rule 30(h)(5), M.R.Civ.P.

3. With respect to the costs awarded for photocopy expenses and exhibit expenses, § 25-10-201(9), MCA, allows the taxing of costs for "such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law." We conclude that the trial court's broad authority for taxing costs permitted the taxing of these expenses. *Cash v. Otis Elevator* (1984), 210 Mont. 319, 684 P.2d 1041.

4. Witness fees in the amount of $20.00 were awarded for two witnesses, John Mizelle and Pat Burns. However, the record supports KXLF's contention that neither of these witnesses appeared at trial to testify. Section 25-10-201(1), MCA, allows the taxing of costs for "legal fees of witnesses, including mileage." We conclude that the obvious intent of this statute is to allow the party to whom costs are awarded to recover fees paid to witnesses who actually appear at trial. Therefore, this expense should not have been included in the award of costs to Kearney. The court also awarded costs for serving subpoenas on Mizelle and Burns, and an additional witness who was neither listed nor called as a witness during the trial. For the reasons already stated, we conclude the court erred when it awarded costs for serving subpoenas on witnesses who did not appear at trial.

13

We affirm the District Court's award of costs to Kearney with the exception that it should be reduced by an amount of $87.90.

## ISSUE 5

Did the District Court err when it directed a verdict against Kearney dismissing his claim that KXLF had violated the express provisions of its own written personnel policy?

On cross-appeal, Kearney alleges that the court erred when it directed a verdict against him dismissing his claim under § 39-2-904 (3) , MCA, which provides that an employer's violation of the express provisions of its own written personnel policy constitutes a cause of action for wrongful discharge. Kearney does not appeal from the jury's verdict dismissing his alternative theory of constructive discharge without good cause.

A court may grant a directed verdict only when it appears as a matter of law that the non-moving party could not recover upon any view of the evidence, including the legitimate inferences to be drawn from the evidence. *Nautilus Insurance v. First National Insurance* (1992), 254 Mont. 296, 837 P.2d 409. A directed verdict for the defendant is not proper if reasonable persons could differ regarding the conclusions which could be drawn from the evidence. *Moralli v. Lake County* (1992), 255 Mont. 23, 839 P.2d 1287. If there is any evidence which warrants submission to the jury, a directed verdict is not proper. *Kestell v. Heritage Health Care* (1993), 259 Mont. 518, 858 P.2d 3. When reviewing a directed verdict, this Court must

14

consider the evidence in a light most favorable to the non-moving party.  *Stout v. Montana Power Co.*(1988), 234 Mont. 303, 762 P.2d 875.

One of the theories set forth by Kearney to establish wrongful discharge from employment was that KXLF had a policy of performing annual evaluations of all of its employees and that such a policy existed in written form, as confirmed by Pamela Crawford who was called by Kearney as an expert witness.  Kearney alleged that he had not received an evaluation in either 1987 or 1988 and, because Cass relied upon Kearney's alleged performance deficiencies to justify the decision to demote Kearney, he was effectively discharged from the position of newe director for reasons about which he was not forewarned and had no opportunity to correct. Therefore, he contends his constructive discharge was actionable because it resulted from KXLF's failure to follow the express provisions of its own policy of evaluating employee performance.

The court granted KXLF's motion for a directed verdict on this matter based on its finding that Kearney was unable to demonstrate that KXLF had violated a written personnel policy which "expressly states that there will written annual evaluations of managers." The court determined that the statute in question requires a violation of an express provision of a policy,  and because Kearney's witness had to interpolate the existence of the policy from several writings,  it concluded that KXLF had no express, written policy to perform annual evaluations.

15

In response to Kearney's argument, KXLF contends that a directed verdict was proper because the court correctly reasoned that if the claimed policy had to be established by implication or inference, there was no express provision giving rise to a claim for wrongful discharge.

The record demonstrates that Kearney's witness, Pamela Crawford, testified that KXLF had an express written policy of performing annual evaluations based on the existence of pre-printed evaluation forms and a memo from Cass's supervisor, Travis Rockey, in which he stated, "[e]ach person should get an evaluation of their performance at least one time per year." Although KXLF's employee handbook contains no specific reference to annual evaluations, Crawford testified that such an express personnel policy can exist without its inclusion in an employee handbook. Furthermore, Kearney notes that Cass testified that all employees of the station were evaluated during 1987 and 1988, using the pre-printed forms, with the exception of Kearney and the other employees whom he directly supervised. Cass also admitted that he had demoted Kearney due to concerns about his ability to supervise subordinates, but had not documented these concerns or warned Kearney of his deficiencies in this regard.

Viewing this evidence most favorably to Kearney, we conclude that conflicting inferences could be drawn from this evidence and that reasonable persons could conclude that KXLF had an established

16

and express policy of performing annual evaluations which it violated with respect to Kearney.

In this instance, Kearney was entitled to have the jury determine whether he met the threshold requirement of showing that KXLF's personnel policy expressly required annual evaluations of all its employees. Therefore, we hold that the court erred when it directed a verdict on this issue.

We reverse the District Court's directed verdict which dismissed Kearney's claim that KXLF violated the express provisions of its personnel policy and remand for further proceedings on this issue. In all other respects, the judgment of the District Court, reduced by the amount of $87.90, is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

17