No. 02-077

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 107

IN THE MATTER OF THE WAGE CLAIMS OF:

SHELLIE R. BABINECZ, JEROME D. BELSTAD,
KEVIN R. FIFIELD, LORI S. GASVODA, PAUL L.
HAZELTON, LAWRENCE E. HENKE, TERRY D.
MAGONE, DANIEL D. MARTIN, DARALEE A. MURPHY,
MARY P. MURPHY, FRANK J. NOWAKOWSKI,
MICHAEL D. REDDICK, MICHAEL T. STANTON,
DEAN V. WALSTON AND SCOTT M. ZARSKE,

          Petitioners and Appellees,

   v.

MONTANA HIGHWAY PATROL,

          Respondent and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark, Cause No. BDV 2000-555,
                The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Respondent and Appellant:

             Hon. Mike McGrath, Attorney General; Kimberly A. Kradolfer,
             Assistant Attorney General, Helena, Montana

        For Petitioners and Appellees:

             Dean D. Chisholm, Kaplan & Chisholm, PLLP, Columbia Falls, Montana

        For Amicus:

              Frederick F. Sherwood, James P. Reynolds, Reynolds, Motl & Sherwood,
             PLLP, Helena, Montana

                      Submitted on Briefs:  December 27, 2002
                              Decided:   April 24, 2003

Filed:

                           Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1	The Petitioners, sixteen Montana Highway Patrol officers, filed federal and state wage claims against the Respondent, Montana Highway Patrol. An administrative hearing examiner dismissed the Petitioners' state wage claim and denied the Respondent's motion to dismiss the federal Fair Labor Standards Act claim. On appeal from that decision, the District Court for the First Judicial District in Lewis and Clark County concluded that the Petitioners were not "covered" by the FLSA and that they could pursue a wage claim action pursuant to Montana statute. The dismissal of the Petitioners' state wage claim action was reversed and the case was remanded. The Respondent appeals the order of the District Court. We affirm the District Court.

¶2	The sole issue on appeal is whether the District Court was correct when it concluded that the Officers have a state claim pursuant to the Montana Wages and Wage Protection Act because they are not "covered" by the Fair Labor Standards Act.

FACTUAL AND PROCEDURAL BACKGROUND

¶3	The Petitioners, sixteen Montana Highway Patrol officers, filed federal and state wage claims against the Montana Highway Patrol with the Commissioner of Labor and Industry Wage and Hour Unit in 1997. The Officers alleged that their meal periods were so restricted that they constituted compensable time. The Officers also alleged that they had not been appropriately compensated for overtime wages.

¶4	The Officers' meal period claim was reviewed and subsequently denied by the commissioner's compliance specialist. She did not address the overtime claims. The Officers appealed the compliance specialist's decision to the Labor Standards Bureau and

2

a hearing examiner was appointed. Following motions for summary judgment by both parties, the hearing examiner concluded that the Officers' wage claims were governed by the FLSA rather than Montana law.

¶5 A hearing was conducted in October of 1998. Subsequently, the United States Supreme Court issued its decision in *Alden v. Maine* (1999), 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636. Based on *Alden*, the Patrol filed a motion to dismiss, in which it alleged that sovereign immunity barred the Officers' wage claim actions. The hearing examiner denied that motion on October 18, 1999. The hearing examiner's order, provided in part:

> [The Patrol] has moved to dismiss, arguing that claimants cannot sue an arm of the state of Montana in a state tribunal without consent of the state. *Alden v. Maine*, 1999 WL 412617 (U.S.). The motion is denied, on the following basis:
> 1.      Montana has not consented to suit against it under FLSA by private parties.
> 2.      *Alden* does govern an administrative contested case wage and hour proceeding.
> 3.      FLSA does not cover state employees who are now without a private right to sue the state for violation of FLSA.

¶6 The Patrol filed a motion for reconsideration. Following the submission of briefs, the hearing examiner denied the Patrol's motion to reconsider and certified its final order. The order stated in part:

> Respondent's motion to reconsider remains premised upon the argument that although claimants now do not have any private remedy against the state, nonetheless they are still 'covered' by FLSA for purposes of Montana law. The hearing officer remains unwilling to rule that 'coverage' means claimants have no remedy unless the United States chooses to pursue actions against the state or individual state officials. There is no basis to conclude that the Montana legislature intended 'coverage' to mean denial of any meaningful remedy to state employees. Therefore, the hearing officer denies the motion for reconsideration.

¶7	Subsequently, the parties appealed the final order to the Board of Personnel Appeals. The BPA reversed the hearing examiner's holding and concluded that both the hearing examiner and the BPA lacked jurisdiction to consider the issue of sovereign immunity.

¶8	The parties filed a petition for judicial review with the District Court for the First Judicial District in Lewis and Clark County on September 12, 2000. The District Court concluded that Montana had not waived sovereign immunity from suit pursuant to the FLSA as required by *Alden*, and that, therefore, the Officers were not "covered" by the FLSA as contemplated by § 39-3-408, MCA (1995). Consequently, the District Court concluded that the Officers' state wage claim was incorrectly dismissed by the hearing examiner and the Officers were entitled to pursue their claim based on the Montana Wages and Wage Protection Act. The case was remanded to the Department of Labor and Industry.

¶9	The parties requested certification pursuant to Rule 54(b), M.R.Civ.P., and the District Court granted that request. The case was then appealed to this Court. On appeal, other officers who are not parties to the action have filed a brief as amicus curiae. They urge that we reverse the District Court's conclusion that the State has not waived sovereign immunity from the federal wage claim. However, the officers who are parties to this action have not cross-appealed that conclusion. Therefore, it is not properly before us. We will address the issue raised on appeal based on the assumption that the State is immune from the federal wage claim without any intent to pre-judge that issue should it be properly presented in the future.

STANDARD OF REVIEW

4

¶10 We review a district court's conclusions of law to determine whether the district court's conclusions are correct. *In Re Custody of Krause*, 2001 MT 37, ¶ 16, 304 Mont. 202, ¶ 16, 19 P.3d 811, ¶ 16.

## DISCUSSION

¶11 Was the District Court correct when it concluded that the Officers have a claim pursuant to the Montana Wages and Wage Protection Act because they were not "covered" by the Fair Labor Standards Act?

¶12 The Patrol contends that, despite the U.S. Supreme Court's decision in *Alden*, the Officers are expressly provided for in the Fair Labor Standards Act. Therefore, the Patrol maintains that the District Court was incorrect when it concluded the Officers were not "covered" by the FLSA.

¶13 The District Court concluded:

> Since this Court has held that the United State Supreme Court decision in *Alden v. Maine* renders the Patrol immune from suit and since Montana has not consented to the suit, the FLSA does not apply to the Officers in state court. This Court holds that the Officers are not covered under the FLSA.
>
> **Do the Officers Have a Claim under Montana Law?**
> Section 39-3-408, MCA provides that if the FLSA does not apply Montana law does apply. Accordingly, the Court holds that the Officers have a claim under Montana law.
> The hearing examiner dismissed the Officers' state law claims based on the premise, which was correct at the time, that the FLSA applied. The hearing examiner therefore did not render a decision based on Montana law. Accordingly, this Court remands this case to the Department of Labor and Industry for further proceedings consistent with this order.

¶14 The FLSA was adopted by Congress in 1938 to ensure a minimum standard of living, a minimum wage, and a maximum work period before an employee becomes entitled to

5

overtime compensation. *Berry v. KRTV Communications, Inc.* (1993), 262 Mont. 415, 420, 865 P.2d 1104, 1107-108. Its teeth are found in "the Act's enforcement mechanism [which] allows employees to recover all unpaid wages plus an equal amount in liquidated damages for any violation of its wage and hour provisions, 29 U.S.C. § 216(b)." *Stewart v. Region II Child Fam. Serv.* (1990), 242 Mont. 88, 94, 788 P.2d 913, 917. Wage guidelines for law enforcement officers are provided for by the FLSA at 29 U.S.C. § 207 (k)(1994). The United States Department of Labor is authorized to define the maximum number of hours a law enforcement officer can work before he or she is entitled to one and one-half times his or her normal compensation. 29 U.S.C. § 207 (k). Accordingly, the Department of Labor adopted regulations which require that law enforcement officers receive overtime compensation for hours worked in excess of 171 hours over a 28-day period. 29 C.F.R. 553.201.

¶15 The Montana Wages and Wage Protection Act also guarantees Montana's employees fair wages and overtime protections, *Berry*, 262 Mont. at 420, 865 P.2d at 1108, and permits employees to recover unpaid wages in the form of liquidated damages. Section 39-3-206, MCA (1995), § 39-3-407, MCA (1995). The WPA's § 39-3-408, MCA (1995), provides:

> **Provisions cumulative.**
> (1)    The provisions of this part shall be in addition to other provisions now provided by law for the payment and collection of wages and salaries but shall not apply to employees covered by the Fair Labor Standards Act except as provided in subsection(2).
> (2)    Sections 39-3-402 and 39-3-404 shall apply to an employee covered by the Fair Labor Standards Act if state law provides a minimum wage that is higher than the minimum wage established under federal law.

¶16 In *Alden*, 527 U.S. 706, 119 S.Ct. 2240, the U.S. Supreme Court considered whether the FLSA created a private right of action against the state of Maine. In state court, the

Maine Supreme Court had dismissed a FLSA wage claim suit filed by a group of probation officers against the state of Maine on the basis of sovereign immunity. The U.S. Supreme Court affirmed the Maine court and held that Congress lacked the authority to subject a non-consenting state to a private action for damages in state court: "We hold that the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting states to private suits for damages in state courts." *Alden*, 527 U.S. at 712, 119 S.Ct. at 2246. Since Maine had not waived its sovereign immunity, the Court held that the probation officers' FLSA wage claim against the state for damages was barred. *Alden*, 527 U.S. at 712, 119 S.Ct. at 2246. The Court recognized that certain remedies would still be available to state employees: non-state government entities could be sued for damages; state officials could be sued for injunctive or declaratory relief; and a state official could be sued in his or her individual capacity. *Alden*, 527 U.S. at 756-57,119 S.Ct. at 2267-268. A FLSA wage claim for monetary damages against the state, however, would have to be filed by the Secretary of Labor on the Officers' behalf. *See Alden*, 527 U.S. at 759, 119 S.Ct. at 2269.

¶17 Previously, the Supreme Court had issued its decision in *Seminole Tribe of Fla. v. Florida* (1996), 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252. In that case, the Court also held that Congress did not have the authority to abrogate a state's sovereign immunity. The Court concluded that the Seminole Tribe could not sue the state of Florida for violating the Indian Gaming Regulatory Act in federal court unless Florida waived sovereign immunity. *Seminole Tribe of Fla.*, 517 U.S. at 49, 116 S.Ct. at 1119. Florida had not waived sovereign

7

immunity. Therefore, the claim brought against the governor of Florida in federal court was properly dismissed.

¶18 Collectively, the holdings in *Alden* and *Seminole Tribe of Fla.* bar FLSA private wage claims for damages in federal and state court when the subject state has not waived sovereign immunity. In the instant case, the District Court concluded that Montana has not waived sovereign immunity to be sued for violation of the FLSA. That conclusion is not disputed on appeal. The precise question on appeal, then, is whether the Officers are "covered" by the FLSA as contemplated by § 39-3-408, MCA (1995), if we assume that immunity has not be waived and in light of the limited remedies available to the Officers after *Alden*.

¶19 The Patrol maintains that if the facts of this case warranted, injunctive relief could be pursued, a state official could be sued in his or her individual capacity, or the Secretary of Labor could pursue a wage claim action for damages on the Officers' behalf. Section 39-3-211, MCA, and the Officers' collective bargaining agreement are also cited by the Patrol as available remedies that were not pursued. The Patrol contends that "coverage" by the FLSA does not contemplate or require that a full panoply of remedies be available. It contends that the FLSA directly addresses law enforcement officers and that, therefore, the Officers are covered by the FLSA.

¶20 Section 39-3-211, MCA, and the collective bargaining agreement have no bearing on whether the Officers are covered by the FLSA as contemplated by § 39-3-408, MCA (1995), of the WPA. The collective bargaining agreement is a contract between the parties independent of the WPA or the FLSA. Section 39-3-211, MCA, simply authorizes the

Commissioner to pursue WPA claims on behalf of an employee or employees. The Patrol offers no explanation of how this affords FLSA coverage.

¶21    In *Plouffe v. Farm & Ranch Equip. Co.* (1977), 174 Mont. 313, 570 P.2d1106, we considered the relationship between the WPA and the FLSA. The employer in that case argued that he was subject to the provisions of the FLSA even though Plouffe was excluded from the overtime provisions of the Federal law and that, therefore, Plouffe did not have a wage claim pursuant to the WPA. We held that the WPA, which did not exclude Plouffe from its overtime provisions, applied to classes of workers who were excluded from protection by the FLSA unless the Montana legislature expressly provided otherwise. *See Plouffe*, 174 Mont. at 318-20, 570 P.2d at 1108-109. We recognized that the FLSA anticipated workers would have a state remedy in areas of wage regulation that Congress had not expressly provided for, or in areas where a state provided additional worker protection and benefits. *Plouffe*, 174 Mont. at 319, 570 P.2d at 1109. We concluded that Plouffe had a remedy pursuant to the WPA because no remedy was available pursuant to the FLSA.

¶22    In *Stewart,* we considered whether the plaintiffs had a state wage claim against an employer who raised the FLSA "good faith" defense. Neither party disputed that the plaintiffs were covered by the FLSA. The district court concluded that the WPA applied to the employees because it provided greater protection for the employees. We reversed the district court and concluded that the FLSA covered the employees and that the good faith affirmative defense raised by the employer barred the plaintiffs' claim. *Stewart*, 242 Mont. at 100, 788 P.2d at 921. We held that the state action was barred by § 39-3-408, MCA.

9

*Stewart*, 242 Mont. at 99-100, 788 P.2d at 920-21. In *Stewart*, the legislature was presumed to have been aware that the good faith defense was available to an employer pursuant to the FLSA even though no such defense was available to an employer pursuant to the WPA.

¶23 In *Berry*, we considered whether a worker who was of a class specifically excluded from the overtime wage provisions of the FLSA was "covered" by the FLSA for WPA purposes. The FLSA did not require KRTV to pay Berry, a news editor, overtime wages. The district court concluded that, although Berry was excluded from overtime wage provisions, he was covered by the FLSA and precluded from recovering overtime wages pursuant to the WPA. We reversed the district court and concluded that Berry was not covered by the FLSA. *Berry*, 262 Mont. at 425-26, 865 P.2d at 1111. We then held that the WPA did not exclude news editors from receiving overtime compensation and, therefore, we held that it contemplated providing wage protection for that class of workers. *Berry*, 262 Mont. at 425-26, 865 P.2d at 1111. *Berry* distinguished *Stewart* because the parties in that case did not dispute that the FLSA covered the employees, and the employees in *Stewart* were not excluded from the FLSA. *Berry*, 262 Mont. at 425, 865 P.2d at 1111. Our decision in *Berry* was subsequently followed in *Kearney v. KXFL Communications, Inc.* (1994), 263 Mont. 407, 412, 869 P.2d 772, 774-75.

¶24 While none of the cited cases addresses the specific issue in this case, they do provide insight to what it means to be "covered" by the FLSA. *Plouffe* and *Berry* indicate that the WPA governs workers' rights when they are excluded from the remedies available pursuant to the FLSA and the Montana legislature has provided otherwise. *Stewart* provides that

10

coverage may exist in the FLSA even though that coverage is defeated by an affirmative defense provided for in the FLSA.

¶25     We conclude that *Plouffe*, *Berry*, and *Kearney* are more analogous than *Stewart* to the present situation and that for purposes of WPA coverage it makes no difference whether a Montana employer is excluded from the protection of the FLSA by its terms or as the practical result of a judicial decision.  To hold otherwise would defeat the policy behind the WPA set forth at § 39-3-401, MCA, where it states:

> **Declaration of policy.**  It is declared to be the policy of this part to:
>
> (1)     establish minimum wage and overtime compensation standards for workers at levels consistent with their health, efficiency, and general well-being;
>
> (2)     safeguard existing minimum wage and overtime compensation standards which are adequate to maintain the health, efficiency, and general well-being of workers against the unfair competition of wage and hour standards which do not provide such adequate standards of living[.]

¶26     As a result of *Alden*, the primary enforcement mechanism of the FLSA, the right to bring a private wage claim against an employer for monetary damages, has been taken from the people whom it was intended to protect.  The practical effect is that the Officers no longer have the full protection of the FLSA.

¶27     The Patrol argues that there are still enforcement mechanisms such as prospective injunctive relief, suits against state officials in their individual capacity and an action for damages on behalf of the employees brought by the Secretary of Labor.  However, prospective relief is not the equivalent of damages.  The continued viability of claims against

11

officials in their individual capacity has been drawn into question. *See Luder v. Endicott* (7ᵗʰ Cir. 2001) 253 F.3d 1020. And, whether the Secretary of Labor chooses to exercise his or her discretion to help an individual recover wages is something over which the employee has no control. Furthermore, as noted by the dissenters in *Alden*, it is highly unlikely. They pointed out the obvious when they stated:

> It is true, of course, that the FLSA does authorize the Secretary of Labor to file suit seeking damages, see 29 U.S.C. § 216(c), but unless Congress plans a significant expansion of the National Government's litigating forces to provide a lawyer whenever private litigation is barred by today's decision and *Seminole Tribe*, the allusion to enforcement of private rights by the National Government is probably not much more than whimsy. Facing reality, Congress specifically found, as long ago as 1974, 'that the enforcement capability of the Secretary of Labor is not alone sufficient to provide redress in all or even a substantial portion of the situations where compliance is not forthcoming voluntarily.' S.Rep. No. 93-690, p. 27 (1974).

*Alden*, 527 U.S. at 810, 119 S.Ct. at 2292-293 (Souter, J., dissenting).

¶28 The private right of action for monetary damages was included in both statutes as a necessary enforcement tool. The private action is the teeth of the FLSA for the individual or group of employees who need to enforce their right to fair wages. The intended coverage is not satisfied by the Secretary of Labor's authority to bring an action on the Officers' behalf at the Secretary's discretion. Nor do any of the other residual remedies sufficiently protect the Officers' rights to guarantee coverage. Without the private action, the right to fair wages cannot be enforced in the manner contemplated by both the Congress and the Montana legislature.

¶29 We conclude that the United States Supreme Court decision creates a *de facto*

exclusion of the Officers from the full protection of the FLSA and that, therefore, the Officers are not covered by the FLSA as contemplated by the Montana legislature in § 39-3-408, MCA (1995). This result is consistent with the legislature's intent as expressed by its 2001 amendment of § 39-3-408, MCA, to expressly cover state employees. Consequently, the WPA applies to the facts of this case pursuant to § 39-3-408, MCA (1995). We affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE